**REVERSE and REMAND; Opinion Filed May 9, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-11-01256-CV

_____

**KELLEY & WITHERSPOON, LLP, KELLEY/WITHERSPOON, LLP,
KEVIN KELLEY, AND NURU WITHERSPOON, Appellants**

**V.**

**JEANNETTE HOOPER, Appellee**

**On Appeal from the County Court at Law No. 5
Dallas County, Texas
Trial Court Cause No. 09-03060-E**

## OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice FitzGerald

Appellee Jeannette Hooper and her husband Charles, now deceased, sued appellants for legal malpractice. The case was tried to a jury, and the trial judge rendered judgment in Jeannette Hooper's favor on the jury verdict. On appeal, appellants raise four points of error challenging the sufficiency of the evidence and the correctness of the jury charge. Concluding that the jury charge was erroneous, we reverse and remand.

_____

[1] The Hon. Martin E. Richter, Retired Justice, sitting by assignment.

# I. BACKGROUND

## A. Factual background

The evidence at trial supported the following facts. Charles and Jeannette Hooper were a married couple. As of September 24, 2004, Charles was 58, and Jeannette was 64. On that date, the Hoopers were traveling together in their car. Charles was driving, and Jeannette was riding in the passenger's seat. At about 11 a.m., while the Hoopers were stopped at a red light, they were rear-ended by a woman driving a Cadillac. Charles immediately grabbed his neck and said, "[O]h, that hurt." He obtained the other driver's contact information, and she identified herself as "Mrs. M.C. Morse." Then the Hoopers went on their way, and Charles completed three or four business appointments he had that afternoon. That evening, the Hoopers were both in pain, and they sought and obtained medical treatment at a K-Clinic. They continued a course of treatment at the K-Clinic for some time, and Dr. Robert Silva at the clinic gave them full releases about six weeks after the accident. Jeannette's recovery was complete, but Charles later had more problems with his neck and back, and he sought medical treatment elsewhere. There was evidence that Charles's neck and back problems after the accident were so severe that he could no longer enjoy hobbies such as playing basketball and even playing chess. He had surgery on his neck in December 2005, but the surgery was not a success. After 2005, he was no longer able to work.

In September 2005, about a year after the accident, the Hoopers retained appellant Kelley & Witherspoon, L.L.P. to represent them in a personal-injury case. They met with appellant Nuru Witherspoon at the beginning of the representation, and he told them that he thought they had a good case. Charles and Jeannette each signed a contingency-fee agreement with the firm. Appellant Kevin Kelley later sent the Hoopers a letter thanking them for retaining the law firm to

2

pursue their case.[2]  In July 2006, Witherspoon sent Amica Insurance Company a settlement demand letter in which he referred to Charles's claims against Amica's insured, "M.C. Morse."

In August 2006, almost a year after the Hoopers had retained appellants, an attorney with the law firm filed the Hoopers' original petition against a single defendant, "M.C. Morse."  In December 2006, M.C. Morse filed a motion for summary judgment in which he contended he was not the driver of the car that allegedly hit the Hoopers' car.  In February 2007, Witherspoon filed an amended petition for the Hoopers adding "Alice Z. Morse" as a defendant.  The trial judge granted M.C. Morse's motion for summary judgment.  Then Alice Morse moved for summary judgment, apparently on the basis of the statute of limitations, and the trial judge granted that motion in June 2007.  There was evidence that appellants did not inform the Hoopers about the outcome of their case until July 2008.  There was also evidence that Witherspoon told the Hoopers in July 2008 that he would appeal the adverse judgment, and that he did not do so.

B.     **Procedural history**

The Hoopers sued appellants for negligence in April 2009.  Charles died of cancer in December 2010, while this case was still pending.

The case was tried to a jury in May 2011.  Jeannette called attorney Carl Weinkauf as an expert, and he testified in support of the elements of her negligence claim against appellants. With respect to damages, Weinkauf testified that but for appellants' negligence Charles probably would have recovered $130,000 for past medical expenses, at least $180,000 for lost earning capacity, $250,000 for pain and suffering, and $250,000 for other damages such as physical impairment and loss of consortium.  He also testified that Jeannette probably would have

---

[2] Kelley's letter and some other documents refer to the law firm as "Kelley|Witherspoon" rather than "Kelley & Witherspoon."  The Hoopers' contingency-fee agreements refer to "Kelley & Witherspoon."

recovered between $10,000 and $20,000. There was evidence that Alice Morse had $500,000 of insurance coverage. Jeannette did not call a medical expert at trial, but her and Charles's medical records were admitted into evidence. The jury found that both Kevin Kelley and Nuru Witherspoon were negligent, found them equally at fault, and found that the Hoopers would have prevailed on their claims against Alice Morse but for Kelley's and Witherspoon's negligence. In answer to broad-form damages questions, the jury further found that Charles would have recovered and collected $225,000 and Jeannette would have recovered and collected $10,000 if the underlying personal-injury suit had been properly prosecuted.

Appellants filed a motion for judgment notwithstanding the verdict and to disregard jury findings. The trial judge denied the motion and rendered judgment against appellants, jointly and severally, in the amount of $235,000, plus prejudgment and postjudgment interest. Appellants filed a motion for new trial, which the trial judge denied. Appellants then timely perfected this appeal.

## II. POINTS OF ERROR ON APPEAL

In their first point of error, appellants contend that there was legally or factually insufficient evidence of proximate cause, i.e., that the Hoopers would have prevailed in the underlying personal-injury suit. In their second point of error, appellants contend that the evidence was legally or factually insufficient to prove that the Hoopers' medical expenses were reasonable and necessary. In their third point of error, appellants contend that the evidence was legally insufficient to prove that Charles would have recovered lost wages in the underlying suit. And in their fourth point of error, appellants contend that the jury charge was erroneous because the damages questions contained both valid and invalid elements of damages for the jury's consideration.

4

## III. ANALYSIS

### A. Sufficiency of the evidence of causation

In their first point of error, appellants argue that Jeannette adduced no competent evidence that she and Charles would have prevailed in their underlying personal-injury suit and recovered damages absent appellants' negligence. More specifically, appellants argue that Texas law required Jeannette to support her claim with medical-expert evidence establishing a causal connection between the underlying auto accident and the damages that she and Charles allegedly would have recovered but for appellants' negligence, and that Jeannette failed to adduce any such medical-expert evidence. Appellants preserved this argument by their motion for judgment notwithstanding the verdict. Alternatively, appellants assert that the evidence of causation was factually insufficient. Jeannette responds that the medical records provided sufficient expert evidence of causation and that, on the facts of this case, the lay testimony she adduced was also sufficient to allow the jury to draw the necessary causal connection.

#### 1. Standard of review

When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that no evidence supports the finding. *Hoss v. Alardin*, 338 S.W.3d 635, 640 (Tex. App.—Dallas 2011, no pet.). "When evidence is so weak as to do no more than create a surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007) (internal quotations and citation omitted). The evidence is legally sufficient if it is sufficient to enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In conducting our review, we view the evidence in the light most favorable to the verdict and

5

indulge every reasonable inference that would support it. *Id*. at 822. We must credit evidence favorable to the verdict if a reasonable person could, and we must disregard contrary evidence unless a reasonable person could not. *Id*. at 827.

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that there is insufficient evidence to support the adverse finding. *Hoss*, 338 S.W.3d at 651. In reviewing the challenge, we consider all the evidence in the record and set the verdict aside only if the evidence supporting the jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id*.

### 2. Applicable law

A legal-malpractice claim is based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). Thus, the elements of the claim are (1) a duty, (2) a breach of that duty, (3) the breach proximately caused injury to the plaintiff, and (4) damages occurred. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). When the plaintiff's claim is that the attorney's negligence caused an adverse result in prior litigation, the plaintiff must prove that it would have prevailed in the underlying case but for its attorney's negligence. *Green v. McKay*, 376 S.W.3d 891, 898 (Tex. App.—Dallas 2012, pet. denied). Courts often refer to this as the "suit-within-a-suit" requirement. *Id*. In some cases, lay testimony is sufficient to establish the causal link between the attorney's negligence and the client's harm; in others, the connection is beyond the jury's common understanding and must be supported by expert testimony. *See Alexander*, 146 S.W.3d at 119; *Cooper v. Harris*, 329 S.W.3d 898, 901–02 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). In a case like this, in which the legal-malpractice plaintiff was a claimant in the underlying case, we have indicated that proof of causation requires evidence of

6

all of the elements of the underlying claim. *See Webb v. Stockford*, 331 S.W.3d 169, 174–77 (Tex. App.—Dallas 2011, pet. denied) (affirming JNOV against legal-malpractice plaintiff who adduced no evidence of one element of underlying misrepresentation claim that defendant attorney allegedly mishandled). The proper measure of damages is the amount that the plaintiff would have recovered and collected in the underlying suit if it had been properly prosecuted. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009); *Cosgrove*, 774 S.W.2d at 665–66.

Appellants contend that Texas law required Jeannette to introduce medical-expert testimony establishing a causal connection between the auto accident and the alleged damages in order to establish the element of causation in her legal-malpractice case. We have found no Texas Supreme Court authority directly on point, but we have held that such evidence is required, at least under some circumstances. In *Cantu v. Horany*, attorney Horany had represented Cantu and Cortez in a medical-malpractice wrongful-death case brought after the death of their son. 195 S.W.3d 867, 869, 874 (Tex. App.—Dallas 2006, no pet.). Cantu and Cortez then sued Horany for legal malpractice, alleging he had failed to sue all responsible parties within the statute of limitations. *Id*. at 869. Horany filed a no-evidence motion for summary judgment challenging the element of causation. *Id*. After the trial judge sustained some objections to Cantu and Cortez's summary-judgment evidence, they were left with only an affidavit by a lawyer in opposition to Horany's motion. *Id*. at 870. The trial judge granted summary judgment, and we affirmed. Even though the lawyer's affidavit contained a statement that Cantu and Cortez more likely than not would have prevailed against the allegedly responsible parties if they had been timely sued, we held that Cantu and Cortez also had to adduce medical-expert testimony showing that they would have prevailed in the underlying

7

medical-malpractice claim. *Id*. at 874. Because they did not, we held that they had failed to provide more than a scintilla of evidence of the essential element of causation. *See id*. Although *Cantu* was a no-evidence-summary-judgment case, it is instructive because a no-evidence summary judgment is essentially a pre-trial directed verdict, *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009), and we review directed verdicts and rulings on motions for judgment notwithstanding the verdict under the same legal-sufficiency standard of review, *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, No. 05-08-01657-CV, 2013 WL 326319, at *20 (Tex. App.—Dallas Jan. 29, 2013, pet. filed).

In *Cantu*, we cited with approval the Houston First Court of Appeals' similar decision in *Rangel v. Lapin*, 177 S.W.3d 17 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Rangel sued his former attorney, Lapin, alleging that Lapin's negligence prevented Rangel from bringing a products-liability claim against Honda Motors. *Id*. at 19–20. Lapin won summary judgment, and the court of appeals affirmed. *Id*. As to the element of causation, Rangel relied solely on his pleadings and on deposition testimony by a lawyer who was familiar with crashworthiness cases that he could have recovered a substantial recovery for Rangel. *Id*. at 22. The court of appeals observed that expert medical, biomechanical, and car-design testimony would have been necessary for Rangel to prevail in his suit against Honda, and it concluded that the lawyer's deposition testimony, standing alone, was insufficient to raise a genuine fact issue that Rangel would have prevailed on his lost claim against Honda. *Id*. at 22–23.

In summary, a legal-malpractice plaintiff who contends that his attorney's negligence caused him to lose a claim he otherwise would have won and collected on must adduce expert testimony to prove the case-within-a-case aspect of causation if that causal connection is beyond a lay juror's common understanding. *See Alexander*, 146 S.W.3d at 119. If the plaintiff would

8

have needed medical-expert testimony to prevail in the underlying suit, then the same kind of testimony is required to prove the case within a case in the legal-malpractice suit. *See Cantu*, 195 S.W.3d at 874; *Rangel*, 177 S.W.3d at 22–23.

### 3. Application of the law to the facts

We conclude that Jeannette was required to adduce medical-expert testimony in support of causation of some, but not all, of the damages she sought to collect from appellants in this legal-malpractice case. On the facts of this case, lay jurors did not need expert testimony in order to find that some of the Hoopers' damages were caused by the underlying auto accident. But some of the damages generally supported by the evidence were too remote and could not be causally connected to the auto accident without medical-expert testimony.

The general rule is that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). In some limited circumstances, however, "the existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence." *Id.* at 667. Lay testimony can suffice to establish the causal connection between an auto accident and a physical condition if (1) the condition is within the common knowledge and experience of laypersons, (2) it did not exist before the accident, (3) it appeared close in time after the accident, and (4) it is a condition within the common knowledge and experience of laypersons, caused by auto accidents. *Id. Guevara* itself was a car-wreck case in which a decedent's surviving daughter successfully sued for over $1 million in medical expenses that the decedent incurred over roughly five months after an auto accident. *Id.* at 663–64. The supreme court reversed, holding that expert testimony was required to draw a causal

9

connection between the accident and many of the decedent's medical conditions and medical expenses. *Id*. at 669–70. But the court also held that no expert testimony was required to connect the accident causally to some of his conditions and medical treatments—specifically, the decedent's immediate post-accident condition and his transportation to and examination in an emergency room. *Id*. at 669; *accord Devoti v. Delaney*, No. 14-11-00497-CV, 2012 WL 3677050, at *3–5 (Tex. App.—Houston [14th Dist.] Aug. 28, 2012, no pet.) (mem. op.) (holding that expert testimony was not required to draw causal connection between auto accident and plaintiff's lower back pain two days later); *Tex. Dep't of Transp. v. Banda*, No. 03-09-00724-CV, 2010 WL 5463857, at *5–6 (Tex. App.—Austin Dec. 22, 2010, pet. denied) (mem. op.) (holding that lay testimony sufficed to connect some, but not all, of plaintiff's personal injuries to auto accident).

Applying *Guevara* to the facts of this case, we conclude that the jury could causally connect some of Jeannette's and Charles's injuries to the September 2004 auto accident without expert testimony. Evidence showed that the Hoopers experienced head and neck pain immediately after the accident, that they continued to experience pain for the rest of the day, and that they sought medical treatment for their pain that evening. The Hoopers would not have had to present medical expert testimony to connect these injuries and medical expenses to the auto accident in a personal-injury trial. *See Guevara*, 247 S.W.3d at 669; *Devoti*, 2012 WL 3677050, at *3–5. Accordingly, Jeannette was not required to present medical-expert evidence as to these immediate injuries in order to prove case-within-a-case causation in this legal-malpractice trial.

But lay testimony was not sufficient to establish a causal connection between the September 2004 auto accident and Charles's medical problems months and even years afterwards. A medical record from November 8, 2004, contained a doctor's statements that

10

Charles's neck was feeling much better, that his headaches were gone, that he had no more pain, and that he had a full range of motion in his neck with no pain. A medical record dated March 24, 2005, reflected that Charles had experienced an increase in pain two weeks earlier, and that he was experiencing severe aching and stiffness in his neck and upper back. In April 2005, one doctor noted "arthritis" among Charles's health conditions. Charles had neck surgery in December 2005 and continued to experience pain in his neck afterwards. For example, there was specific evidence that Charles experienced pain in February 2007 and that he experienced spasms in August 2008. We conclude that a lay jury could not reasonably find a causal connection between all of these medical problems and the September 2004 auto accident without the aid of medical-expert testimony. *See Guevara*, 247 S.W.3d at 669–70 (holding that expert testimony was required to connect auto accident to medical services incurred over the next few months, including two surgeries, numerous laboratory procedures, and treatments for respiratory failure and kidney failure); *Banda*, 2010 WL 5463857, at *5–6 (holding that expert testimony was needed to connect auto accident to physical problems Banda experienced after his initial treatment phase was complete).

Jeannette argues that the medical records admitted into evidence supply the medical-expert testimony needed to connect all of Charles's damages to the September 2004 auto accident. We disagree. We have held that "[i]f medical records are to be considered expert testimony, they must be evaluated applying the same principles used to evaluate the opinion of an expert." *State Office of Risk Mgmt. v. Adkins*, 347 S.W.3d 394, 402 (Tex. App.—Dallas 2011, no pet.); *see also Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 618–19 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (en banc) (Brister, J., concurring) (arguing that medical records and other documentary evidence could not substitute for legally required expert

11

testimony to support causation). In *Adkins*, we said that a doctor's report could not constitute evidence of a causal link between an incident and an injury without mentioning the incident. 347 S.W.3d at 403.

In this case, the only medical records that Jeannette specifically cites are two November 8, 2004 "release reports" by Dr. Silva. In those reports, Dr. Silva stated his opinion that, "in all reasonable medical probability," the conditions for which he had been treating Jeannette and Charles were "directly related" to the September 2004 auto accident, "to the best of my knowledge and belief." He also gave each of them a "full release," opining that they had largely recovered from their injuries as of November 8. Even assuming that these reports constitute competent expert evidence of causation for the Hoopers' injuries and medical treatment up to November 8, we conclude that the medical records relating to Charles's long history of pain and medical treatment after that date are not competent expert evidence of causation. Many of those medical records do not mention the September 2004 auto accident at all. Some mention that Charles reported the auto accident as the beginning of his symptoms, but they do not contain independent causation opinions to that effect by medical experts. We note a few examples. Dr. Don West's report about Charles in March 2005 notes the September 2004 accident and contains the statement, "Cervicothoracic strain syndrome rule out cervical spinal stenosis secondary to MVA 9/24/04." This is not an opinion affirmatively connecting Charles's health problems with the accident. An April 2005 report about Charles's MRI confirmed that he had stenosis, but it did not identify a cause of the condition. A July 2005 note by Dr. Huntly Chapman reports that Charles connected his medical problems to the September 2004 accident, but it does not contain a confirming opinion by Dr. Chapman. The operative report from Charles's December 2005 neck surgery contains no causation opinions.

12

Jeannette also argues that appellants failed to preserve their attack on the probative value of the medical records in the trial court. She contends that their argument is a challenge to the reliability of expert testimony that had to be preserved by objection. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998) (explaining objection requirement for reliability challenges). We disagree. As explained above, the post-November 2004 medical records simply do not contain any medical-expert causation opinions connecting the September 2004 accident with injuries and damages suffered long after the fact. This is not a reliability defect, and appellants did not need to object to the medical records on that basis in order to preserve their challenge to the sufficiency of the evidence of causation.

Jeannette also mentions, although not in connection with appellants' first issue, the July 2006 demand letter that appellant Witherspoon signed and sent to M.C. Morse's insurance carrier. In that letter, Witherspoon asserted that Charles had "undergone multiple surgeries as a direct result" of the accident, opined that it was "likely" that he would continue to experience "long-term symptoms," and listed Charles's expenses from various medical providers totaling about $130,000. Witherspoon attributed about $122,000 of that amount to Charles's December 2005 surgery, over a year after the accident. Jeannette asserts that this letter is an admission of causation of all of Charles's injuries and medical expenses. We disagree. Setting aside the fact that Witherspoon was not shown to be a medical expert, we conclude that his statements in the demand letter are bare conclusions as to the question of causation, and thus are not probative evidence of causation. *See Webb v. Stockford*, 331 S.W.3d 169, 176 (Tex. App.—Dallas 2011, pet. denied) (holding that defendant attorney's testimony that plaintiff "had a pretty good chance of prevailing" in the underlying trial was conclusory and no evidence of causation); *see also Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010) (stating that conclusory opinions are not

13

probative evidence, regardless of whether they are objected to); *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 172 (Tex. App.—Dallas 2008, no pet.) (stating that an opinion is conclusory when it lacks factual substantiation and explanation).

For the foregoing reasons, we conclude that appellants' argument under their first point of error has some merit. There is legally insufficient evidence to support a causal connection between all of the Hoopers' injuries and damages and the September 2004 auto accident. In particular, there is legally insufficient evidence to support a causal connection between the September 2004 accident and any of Charles's lost-earning-capacity damages, which arose from his inability to work after 2005. There is also legally insufficient evidence to connect all of Charles's medical expenses to the September 2004 accident. But there is legally sufficient evidence to support a causal connection between that accident and some of the Hoopers' injuries and damages—specifically, the injuries they suffered and the damages they incurred immediately after the accident.

### 4. Conclusion

Appellants' legal-sufficiency argument ultimately fails because of the broad-form submission of damages to the jury. When a damages question is submitted in broad form, it is difficult if not impossible to determine the amount the jury awarded for each element of damages included in the question. *Tex. Youth Comm'n v. Koustoubardis*, 378 S.W.3d 497, 501 (Tex. App.—Dallas 2012, no pet.). To mount a successful evidentiary challenge to a multi-element damages award, an appellant must address all of the elements and show that the evidence is insufficient to support the entire damages award considering all the elements. *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 885 (Tex. App.—Dallas 2003, no pet.). Appellants have failed to make this showing.

14

The jury found in answer to Question 2 that Charles's damages were $225,000 and in answer to Question 3 that Jeannette's damages were $10,000. Under the jury instructions, these findings were the amounts that the Hoopers would have recovered and collected if appellants had properly prosecuted the suit. Each question was in broad form, meaning the jury was given a single blank to fill in, followed by the instruction, "In determining the amount of damages, you may consider the following," followed by a list of various categories of personal-injury damages. In Question 2, those categories were Charles's past medical expenses and his past and future physical pain and mental anguish, loss of earning capacity, physical impairment, loss of consortium, and loss of household services. In Question 3, those categories were Jeannette's past physical pain, mental anguish, and medical expenses, and her past and future loss of consortium and loss of household services.

Although appellants have shown that causation of at least one submitted element of damages—Charles's lost earning capacity—was supported by legally insufficient evidence, they have not shown that the evidence of causation was legally insufficient as to all submitted elements of damages. Accordingly, appellant's legal-sufficiency challenge to causation of the entire amount of damages fails. We overrule appellants' first point of error to the extent appellants challenge the legal sufficiency of the evidence of causation. Because we are reversing and remanding based on jury-charge error, we need not address appellants' alternative factual-sufficiency argument.

B.     Jury-charge error

In appellants' fourth point of error, they contend that the trial judge erred by submitting a broad-form jury question about the damages Charles would have recovered in the underlying case. In Question 2, the jury was asked, "What sum of money, if paid now in cash, would

15

Charles Hooper have recovered and collected in his suit against Mrs. M.C. Morse (Alice Morse) if his suit had been properly prosecuted?" A single blank for damages was provided, followed by an instruction that the jury could consider certain categories of damages such as Charles's past medical expenses and his past and future physical pain and mental anguish, loss of earning capacity, physical impairment, loss of consortium, and loss of household services. Appellants objected to the trial judge's refusal to submit a separate damages blank for each category of damages. The trial judge overruled the objection. We review this ruling for abuse of discretion. *See Webb v. Glenbrook Owners Ass'n. Inc.*, 298 S.W.3d 374, 380 (Tex. App.—Dallas 2009, no pet.) ("We review claimed error in the court's charge under an abuse of discretion standard.").

The Texas Supreme Court has held that it is error for the trial court to submit a broad-form jury question on damages that includes valid and invalid elements of damages, and that such an error is harmful because it prevents the appellate court from determining whether the jury based its damages finding on valid or invalid elements. *Harris Cnty. v. Smith*, 96 S.W.3d 230, 234 (Tex. 2002); *see also* TEX. R. APP. P. 44.1(a)(2) (error is harmful if it "probably prevented the appellant from properly presenting the case to the court of appeals"); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000) (adopting similar rule applicable when jury question erroneously commingles valid and invalid liability theories). An element of damages is "invalid" if it is not supported by any evidence. *See Smith*, 96 S.W.3d at 231–32; *see also Thota v. Young*, 366 S.W.3d 678, 680 (Tex. 2012) (noting that error is reversible if a "broad-form question commingles damage elements that are unsupported by legally sufficient evidence"). The supreme court has elaborated that the inclusion of a "factually unsupported claim" is not automatically harmful error, but that the inclusion is harmful unless the appellate court is

16

reasonably certain that the jury was not significantly influenced by the inclusion of the erroneous issue. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 227–28 (Tex. 2005).

We have already concluded that Jeannette adduced no probative, i.e., medical expert, evidence that any of Charles's lost-earning-capacity damages were caused by the underlying auto accident. Question 2, however, allowed the jury to award amounts for both past and future lost earning capacity. These were invalid elements of damages under *Smith*, and appellants were entitled to a separate damages blank for each element of damages so that they could properly present their appeal as to each invalid element. Accordingly, the trial judge erred by overruling appellants' objection to the submission of a single damages blank in Question 2 instead of a separate damages blank for each element. Moreover, the error prevents us from determining whether the jury's damages finding was based on valid or invalid elements. *See Smith*, 96 S.W.3d at 234; *see also* TEX. R. APP. P. 44.1(a)(2). Because Jeannette presented evidence that Charles sustained significant lost-earning-capacity damages but presented no probative evidence of causation, we cannot be reasonably certain that the jury was not influenced by the inclusion of past and future lost earning capacity in the damages question. Thus, the error is harmful. *See Romero*, 166 S.W.3d at 227–28.

Jeannette argues that appellants' objection to the charge was insufficient to preserve error. This is the objection appellants' counsel made during the formal charge conference:

> As to Question Number 2, in regards to damages of Charles Hooper, defendants would object to the submission of a single damages question and would argue that that is actually prejudicial to defendants, instead of individual damages answers for each and every alleged element of damages.

> THE COURT: Okay. That objection is overruled.

17

After that exchange, appellants objected specifically to the inclusion of medical expenses in the list of categories of damages based on lack of evidence of reasonableness or of causation. Moreover, in an informal jury-charge conference held shortly before the formal charge conference, the judge and attorneys discussed the propriety of the broad-form damages question after appellants' counsel objected to broad-form submission. During the informal conference, both the trial judge and Jeannette's attorney observed that broad-form submission was proper as long as there was some evidence of each listed element of damages.

Jeannette contends that the objection was insufficient because appellants did not specifically point out which elements of damages were supported by legally insufficient evidence. In *Smith*, the supreme court held that the defendant preserved error by objecting that particular elements of damages had no support in the evidence and should not be included in the charge. 96 S.W.3d at 232. But the court did not indicate that this was the only objection that would preserve error. We have indicated that the complaining party should ask the trial judge to "require the jury to specify the amount of damages for each element" of damages. *Hani v. Jimenez*, 264 S.W.3d 881, 887 (Tex. App.—Dallas 2008, pet. denied); *see also Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 268 (Tex. App.—Corpus Christi 2006, pet. denied) (holding that error was preserved by objection that charge contained only one blank for two claimants' damages and "should be separated out"). The basic test for preserving charge error is whether the complaining party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. *Thota*, 366 S.W.3d at 689. That is what appellants did in this case. On the facts of this case, appellants' objection to broad-form submission met this test and sufficed to preserve error.

18

Jeannette's other responsive argument is that appellant's objection to broad-form submission is meritless because this was a legal-malpractice case, not a personal-injury case. She contends that the measure of damages is different in the two kinds of cases and that legal-malpractice precedents support broad-form submission of damages just as was done in this case. It is true that the measure of damages in this legal-malpractice case is different from the measure of damages that would have been used in a trial of the underlying personal-injury case. In this legal-malpractice case, Jeannette's damages are limited to the amount that would have been both recovered and collected in the underlying case, while collectability would not have been a limitation on the Hoopers' damages in the personal-injury suit. *See Cosgrove*, 774 S.W.2d at 665–66 (stating that the legal-malpractice measure of damages is the amount that would have been recovered and collected if the underlying suit had been prosecuted properly). Aside from this limitation, however, Jeannette was seeking the same damages in this case that she and Charles would have recovered in the underlying case: physical pain and mental anguish, medical expenses, lost earning capacity, and the like. If the Hoopers could not have recovered a certain category of damages in the underlying case for some reason, they also could not recover damages for that category in this legal-malpractice case. Submitting a broad-form jury charge that includes an unrecoverable category of damages is just as improper and injurious in a legal-malpractice case as it is in a personal-injury case. Accordingly, we conclude that the rule of *Smith* applies to this legal-malpractice case.

Our decision in *Webb v. Stockford*, cited by Jeannette, is not relevant. In that legal-malpractice case, the plaintiffs sued their attorney for mishandling a prior fraud case in which they had also been the plaintiffs. *Webb*, 331 S.W.3d at 172–73. Although the plaintiffs won a jury verdict in the legal-malpractice case, the trial judge granted the defendant a take-nothing

19

judgment notwithstanding the verdict. *Id*. We affirmed, concluding that the plaintiffs had adduced no evidence of a misrepresentation by one of the two underlying fraud defendants and no evidence of collectability of a judgment against the other. *Id*. at 174–78. Although we quoted part of the damages question in the opinion, *id*. at 173 n.4, there is no indication that a *Smith* objection was raised, and we did not mention the *Smith* line of authority at all. *Webb* is not on point.

We sustain appellants' fourth point of error.

## C.    Conclusion

In their first point of error, appellants have shown that the evidence of causation was legally insufficient as to at least one category of damages listed in the broad-form jury charge. In their fourth point of error, they have shown that the trial judge erred by overruling their objection to broad-form damages questions that included an element of damages that was not supported by any evidence. Because we sustain appellants' fourth point of error and reverse on that basis, we need not consider appellants' second and third points of error in which they further challenge the sufficiency of the evidence as to two specific categories of damages.

## IV.    DISPOSITION

For the foregoing reasons, we reverse the judgment of the trial court, and we remand the case for further proceedings consistent with this opinion.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

111256F.P05

20



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KELLEY & WITHERSPOON, LLP, KELLEY/WITHERSPOON, LLP, KEVIN KELLEY, AND NURU WITHERSPOON, Appellants

No. 05-11-01256-CV  V.

JEANNETTE HOOPER, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. 09-03060-E.
Opinion delivered by Justice FitzGerald, Justices Fillmore and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellants Kelley & Witherspoon, LLP, Kelley/Witherspoon, LLP, Kevin Kelley, and Nuru Witherspoon recover their costs of this appeal from appellee Jeannette Hooper.

Judgment entered May 9, 2013.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE