

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00040-CV

Enrique **CANTU** and Bridgefield Casualty Insurance Company,
Appellants

v.

Javier A. **LIBSON**, Nosbil, Inc., Jose Luis Ramirez, Utica National Insurance Group, Utica
National Insurance Company of Texas, Utica Mutual Insurance Company, and Republic Franklin
Insurance Company,
Appellees

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 22-03-40915-MCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                  Lori I. Valenzuela, Justice
                  H. Todd McCray, Justice

Delivered and Filed: November 26, 2025

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellants Enrique Cantu and Bridgefield Casualty Insurance Company appeal a no-evidence summary judgment in favor of appellees Javier A. Libson, Nosbil, Inc., and Jose Luis Ramirez ("the Nosbil defendants"). We affirm the summary judgment as to Cantu's negligence per se, negligent hiring, training, and retention, and negligent entrustment claims. We reverse the summary judgment as to Cantu's ordinary negligence claims, and we remand for further

proceedings on those claims. We also reverse the judgment as to appellees Utica National Insurance Group, Utica National Insurance Company of Texas, Utica Mutual Insurance Company, and Republic Franklin Insurance Company ("the insurance defendants").

## BACKGROUND

Near dawn on a foggy morning in November of 2021, Cantu and Ramirez were involved in a collision on a Maverick County highway. Cantu was traveling in a main lane of travel next to the shoulder, while Ramirez was driving a tractor with a mowing attachment on the shoulder. After Ramirez moved from the shoulder into the main lane, Cantu collided with the mowing attachment. It is undisputed that Ramirez was acting in the course and scope of his employment with Nosbil at the relevant time.

Cantu sued all three Nosbil defendants for negligence and negligence per se, and he brought claims of negligent hiring, training, and retention, as well as negligent entrustment, against Libson and Nosbil. Cantu alleged, *inter alia*, that Ramirez changed lanes when it was unsafe to do so; that Libson and Nosbil were vicariously liable for Ramirez's negligence; and that his damages included medical expenses, physical pain, and physical impairment. He also sued the insurance defendants, alleging that those entities had issued uninsured and underinsured motorist policies to his employer, that he had presented claims under those purported policies,[1] and that his claims remained unpaid. Cantu later added USI Southwest, Inc., as a defendant, but he nonsuited those claims prior to judgment. Bridgefield, which contends that it paid worker's compensation benefits to Cantu, intervened to assert a subrogation interest.

The insurance defendants filed a joint motion for summary judgment, but the record does not show that the trial court ever heard that motion or set it for a hearing. The Nosbil defendants

---

[1] Utica National Insurance Group, Utica National Insurance Company of Texas, and Utica Mutual Insurance Company contended below that they never issued any policies to Cantu's employer. We express no opinion on that issue.

filed a traditional and no-evidence motion for summary judgment, Cantu responded to that motion, and the Nosbil defendants filed written objections to Cantu's summary judgment evidence. The trial court heard the Nosbil defendants' motion for summary judgment on October 10, 2024. During the hearing, the trial court granted some, but not all, of the Nosbil defendants' objections to Cantu's evidence.

On October 24, 2024, the trial court signed an order granting the Nosbil defendants' no-evidence motion for summary judgment. The trial court's order did not grant or otherwise address the Nosbil defendants' traditional motion for summary judgment. The order expressly "dismiss[ed] and dispos[ed] of all claims against" the Nosbil defendants. The order further provided, "This judgment is a final order and disposes of all parties and all claims and is appealable. Any relief not granted in this motion is DENIED." After the trial court overruled their motions for new trial by operation of law, Cantu and Bridgefield timely filed notices of appeal.[2]

**ANALYSIS**

***No-Evidence Summary Judgment***

As a threshold matter, we note that Cantu's brief disclaims any challenge to the no-evidence summary judgment on his negligence per se, negligent hiring, training, and retention, and negligent entrustment claims. We therefore affirm the judgment as to those claims. *See, e.g.*, *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 722–23 (Tex. App.—Fort Worth 2013, no pet.).

In his first issue, Cantu argues the trial court abused its discretion by excluding some of his summary judgment evidence. In his second issue, he contends the trial court erred by granting a no-evidence summary judgment on his ordinary negligence claims. In conducting our review, we must avoid deciding abstract questions of law that do not bind the parties. *See Tex. Ass'n of Bus.*

---

[2] Instead of filing its own brief in this appeal, Bridgefield filed a letter brief adopting Cantu's arguments.

*v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). We must also "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1. Accordingly, before we consider Cantu's challenge to the trial court's evidentiary rulings, we will determine whether the evidence the trial court actually considered was sufficient to defeat the Nosbil defendants' no-evidence motion for summary judgment.[3]

*Standard of Review*

"After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). A proper no-evidence motion for summary judgment "must state the elements as to which there is no evidence." *Id.* If the motion adequately states the elements for which there is no evidence, the burden shifts to the non-movant to present evidence that raises a genuine issue of material fact as to each challenged element. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023).

A no-evidence summary judgment is essentially a pre-trial directed verdict, and we review the trial court's ruling de novo. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). "A no-evidence motion will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact,

---

[3] In their brief, the Nosbil defendants argue that Cantu's claim that the trial court erred by granting a no-evidence summary judgment "is based on the premise that all his evidence was admissible." They further argue that Cantu's challenge to the trial court's evidentiary rulings is essentially a concession that "without that [excluded] evidence, Cantu has no evidence to prevent a summary judgment[.]" We disagree. Cantu's appellate arguments that he met his summary judgment burden rely on both the excluded evidence and the un-excluded evidence. We do not interpret his briefing as conceding that the evidence the trial court considered was insufficient to raise a fact question.

(c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Lozada v. Posada*, 718 S.W.3d 262, 266 (Tex. 2025) (per curiam) (internal quotation marks omitted). More than a scintilla of evidence exists if reasonable and fair-minded people could differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). In contrast, less than a scintilla of evidence exists when the evidence is so weak that it creates no more than a surmise or suspicion of the challenged fact. *Lozada*, 718 S.W.3d at 266. In determining whether the non-movant produced more than a scintilla of evidence to support each challenged element of his claim, we view the evidence in the light most favorable to the non-movant and "and indulge every reasonable inference and resolve any doubts against the motion." *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019).

*Applicable Law*

To prevail on a negligence claim, a plaintiff must plead and prove "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Tenaris Bay City Inc. v. Ellisor*, 718 S.W.3d 193, 197 (Tex. 2025) (citation omitted). In their no-evidence motion for summary judgment, the Nosbil defendants asserted that Cantu "could not prove": (1) that they owed him a legal duty; (2) that they breached any legal duty; (3) "that any alleged breach of duty by Defendants was cause in fact of Plaintiff's injuries"; and (4) "the improper roadway conduct of Plaintiff was foreseeable to Defendants." The motion did not dispute that Libson and Nosbil would be vicariously liable for Ramirez's negligence, if any.

*Application*

A.  The Evidence the Trial Court Considered

During the summary judgment proceedings, both Cantu and the Nosbil defendants presented the crash report prepared by the officer who investigated the collision. Cantu also presented his own affidavit; an affidavit and expert report from an accident reconstructionist, Ricardo Palacios; the City of Eagle Pass Fire Department's EMS report regarding the collision; his post-collision medical records from Fort Duncan Regional Medical Center and Pro-Care Medical Center; discovery responses from the Nosbil defendants regarding Ramirez's employment; a transcript showing Ramirez failed to appear for his deposition; and a defense motion to quash depositions of Libson and a representative of one of the insurance defendants.

The trial court sustained the Nosbil defendants' objections to portions of Cantu's affidavit, but it overruled their objections to other portions of the affidavit. The trial court also sustained the Nosbil defendants' objections to portions of Palacios's affidavit and report, the entirety of the Fort Duncan medical records, and a portion of the Pro-Care records in which a medical provider named Kyle Campbell expressed his opinion about the cause of Cantu's injuries. The Nosbil defendants did not object to Cantu's remaining summary judgment evidence, including the EMS report or statements in the Pro-Care records other than Campbell's causation opinion.

B.  Duty and Breach

The Nosbil defendants' motion for summary judgment argued that there was no evidence of the duty and breach elements of Cantu's ordinary negligence claim. Whether a legal duty exists is a question of law. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). It is well-established that drivers owe "a common-law duty to act as a reasonably prudent person . . . toward others on the road." *Lozada*, 718 S.W.3d at 267 (internal quotation marks

omitted, alteration in original); *Pleasant v. Hernandez*, No. 14-21-00617-CV, 2022 WL 3655176, at \*4 (Tex. App.—Houston [14th Dist.] Aug. 25, 2022, no pet.) (mem. op.). "Drivers also have the general duty to keep a proper lookout," and that duty includes a "duty to observe, in a careful and intelligent manner, traffic and the general situation in the vicinity, including speed and proximity of other vehicles, as well as rules of the road and common experience." *Pleasant*, 2022 WL 3655176, at \*4 (internal quotation marks omitted, alteration in original). While Texas courts have historically held that a lead driver—here, Ramirez—generally does not have a duty to keep a lookout to his rear, those cases also note that such a duty exists where the lead driver "*suddenly changes lanes*, stops or accelerates his vehicle suddenly or without cause, or makes some other maneuver which following vehicles have no reason to expect[.]" *Oakley v. C.E. Duke's Wrecker Serv.*, 557 S.W.2d 810, 811–12 (Tex. App.—Houston [1st Dist.] 1977, writ' ref'd n.r.e.) (emphasis added); *Berry v. Sunshine Laundries & Dry Cleaning Corp.*, 387 S.W.2d 948, 949 (Tex. App.— San Antonio 1965, writ ref'd n.r.e.); *see also Montes v. Pendergrass*, 61 S.W.3d 505, 509 (Tex. App.—San Antonio 2001, no pet.) (holding lead driver was not entitled to summary judgment on duty and breach where evidence showed traffic conditions required other drivers to merge into his lane and he did not keep a lookout for those merging vehicles). "Generally, whether a driver kept a proper lookout in an automobile negligence case is a question for the factfinder." *Pleasant*, 2022 WL 3655176, at \*4 (internal quotation marks omitted).

The parties appear to agree that immediately prior to the collision, Ramirez was driving his tractor on the shoulder while Cantu was traveling in the adjacent main lane. The Nosbil defendants' brief represents that at the relevant time, "Ramirez's tractor . . . had partially entered onto the highway from the shoulder to avoid a mailbox." Similarly, the crash report reflects that Ramirez "was unable to utilize more of the shoulder due to a mailbox near roadway at the area of impact."

The crash report also indicates that "[t]here was a dense fog on the roadway during the time of the crash" and that Cantu told the responding officer that Ramirez's tractor "was being operated without lights."

Without the portions excluded by the trial court, Cantu's affidavit reads:

> At approximately 6:45 AM on November 16, 2021, I was involved in a motor vehicle collision with Jose Luis Ramirez on US Highway 277 in Maverick County Texas. Mr. Ramirez was driving a green John Deere Tractor that was towing a mowing attachment for the tractor. There was fog on the roadway when the tractor incorporated into the highway[.] . . .
>
> I was driving down US Highway 277 and suddenly and without warning, Mr. Ramirez, exited the shoulder and entered the main lane of US Highway 277 in front of my vehicle.
>
> Mr. Ramirez did not have his emergency lights switched on, and while I attempted to swerve out of the way to avoid the collision . . .
>
> . . . I did not see the tractor operated by Mr. Ramirez until it suddenly invaded my lane of travel.

The Nosbil defendants pointed out to the trial court and in this court that both the investigating officer and Ramirez disagreed with Cantu's statement that Ramirez was operating his vehicle without lights. They also noted that the officer identified Cantu's speed as the cause of the collision. As noted above, however, we must view the evidence in the light most favorable to Cantu and disregard all contrary evidence and inferences. *See, e.g.*, *Covarrubias v. Diamond Shamrock Refining Co., LP*, 359 S.W.3d 298, 301 (Tex. App.—San Antonio 2012, no pet.). When viewed in the light most favorable to Cantu, the evidence described above would permit a rational factfinder to conclude that Ramirez "suddenly and without warning" moved his vehicle from the shoulder and directly into Cantu's path in dense fog without using his lights. Based on that evidence, reasonable people could disagree about whether Ramirez deviated from what a reasonably prudent person would have done under the circumstances. *See Pleasant*, 2022 WL

3655176, at \*4. The conflicting evidence on which the Nosbil defendants rely "does no more than create a fact issue on whether [Cantu] was the sole cause of the wreck," and fact issues may not be resolved on summary judgment. *Id.* at \*5; *see also Montes*, 61 S.W.3d at 510 ("[W]hich version of the evidence is most credible is for a jury to decide.").

On appeal, the Nosbil defendants argue that because Cantu has not challenged the trial court's dismissal of his negligence per se claims, the trial court's ruling on that claim "remains intact" and precludes Cantu from establishing breach by pointing to any statutory violations "regarding Ramirez's speed, lights, and signage." This appears to be an argument that Cantu's abandonment of his negligence per se claim means he cannot prove his common-law ordinary negligence claim. The authority the Nosbil defendants cite for this proposition does not support it. *See Maldonado v. Sumeer Homes, Inc.*, No. 05-12-01599-CV, 2015 WL 3866561, at \*2 (Tex. App.—Dallas June 23, 2015, no pet.) (mem. op.) (conducting substantive review of appellant's negligence claim after noting appellant did not challenge summary judgment on related negligence per se claim). As the Nosbil defendants themselves note, moreover, negligence per se is "merely one method of proving a breach of duty[.]" *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.— Houston [14th Dist.] 2009, pet. denied) (emphasis omitted). The Nosbil defendants have not cited any authority holding that the trial court's ruling on Cantu's negligence per se claim is dispositive of his allegations that Ramirez breached the common-law duty of reasonable care by moving into the path of an oncoming vehicle. We therefore decline the Nosbil defendants' invitation to affirm the summary judgment on this basis.

For these reasons, the summary judgment evidence the trial court considered was sufficient to satisfy Cantu's burden as to the duty and breach elements of his negligence claim. To the extent that the trial court granted a no-evidence summary judgment on those elements, it erred.

C. Causation of Cantu's Injuries

The Nosbil defendants' motion for summary judgment also argued that there was no evidence "that any alleged breach of duty by Defendants was [a] cause in fact of Plaintiff's injuries" or that "the improper roadway conduct of Plaintiff was foreseeable to Defendants." Cause in fact and foreseeability are the two elements of proximate cause. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

The foreseeability prong of a plaintiff's negligence claim asks "whether an injury might reasonably have been contemplated because of the *defendant's* conduct." *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998) (emphasis added); *see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (holding plaintiffs did not raise a fact question about whether sexual assault by defendant's volunteer was foreseeable result of defendant's failure to conduct background checks). The Nosbil defendants did not cite any authority holding that a plaintiff is required to present evidence regarding the foreseeability of the risk, if any, posed by his own conduct, and we are not aware of any. While the question of whether Cantu's conduct caused or contributed to the collision might potentially be relevant to one or more defensive issues, the Nosbil defendants may not obtain a no-evidence summary judgment on the elements of their own defenses. *See In re Est. of Danford*, 550 S.W.3d 275, 282 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Their motion therefore did not establish that they were entitled to a no-evidence summary judgment on foreseeability.

"Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). Because the motion specifically challenged cause in fact as to Cantu's injuries, we construe it as an argument that there was no

evidence to establish a causal connection between the collision and Cantu's damages, rather than as an assertion that there was no evidence that Ramirez's negligence caused the collision itself. *See, e.g.*, *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984) (drawing distinction between "a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries").

Cantu's summary judgment response cited evidence showing that he "was transported by ambulance to" a hospital after the collision. During the summary judgment hearing—but not in the motion itself—the Nosbil defendants argued that Cantu was required to present expert medical testimony on causation to support his claims. Expert medical evidence is required "to establish causation as to medical conditions outside the common knowledge and experience of jurors[.]" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (internal quotation marks omitted). But under some circumstances, "the existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence." *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007). "Lay testimony can suffice to establish the causal connection between an auto accident and a physical condition if (1) the condition is within the common knowledge and experience of laypersons, (2) it did not exist before the accident, (3) it appeared close in time after the accident, and (4) it is a condition within the common knowledge and experience of laypersons, caused by auto accidents." *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 849 (Tex. App.—Dallas 2013, no pet.) (citing *Guevara*, 247 S.W.3d at 667).

In *Guevara*, the Texas Supreme Court held that when a plaintiff is "pulled from a damaged automobile with overt injuries" that he did not have before the accident, "it would be within the general experience and common knowledge of laypersons that [an automobile] accident caused [a

plaintiff] to be transported to a medical care facility and to be cared for medically to some degree." *Guevara*, 247 S.W.3d at 667. The court thus reasoned that lay testimony about the "circumstances surrounding the accident" and the plaintiff's post-collision complaints was "sufficient to allow a layperson of common knowledge and experience to determine that [the plaintiff's] immediate post-accident condition which resulted in his being transported to an emergency room and examined in the emergency room were causally related to the accident." *Id.* at 669.

The evidence the trial court considered in this case mandates the same conclusion here. The EMS report indicated that Cantu complained of shoulder, back, and neck pain at the scene and was transported to the hospital by ambulance immediately after the collision. *See Tex. Dep't of Transp. v. Banda*, No. 03-09-00724-CV, 2010 WL 5463857, at *5 (Tex. App.—Austin Dec. 22, 2010, pet. denied) (mem. op.) ("Although *Guevara* uses broken bones and lacerations as examples of injuries that logically result from car accidents and can be supported solely by lay testimony, we believe that back and neck pain . . . can also be within the experience and knowledge of laypersons as being caused by car accidents."). The EMS report also showed that Cantu's airbags deployed in the collision. *See id.* at *4 (considering plaintiff's lay testimony "that the impact [of a collision] was 'strong'"). Under *Guevara* and its progeny, this is more than a scintilla of evidence to establish a causal connection between the collision and Cantu's immediate post-collision complaints of pain, his transportation by ambulance to the hospital, and his examination in the emergency room. *See Guevara*, 247 S.W.3d at 669; *Elizondo v. Reyna*, No. 04-24-00284-CV, 2025 WL 2462764, at *3 (Tex. App.—San Antonio Aug. 27, 2025, no pet.); *Kelley*, 401 S.W.3d at 849–50; *Devoti v. Delaney*, No. 14-11-00497-CV, 2012 WL 3677050, at *3–5 (Tex. App.—Houston [14th Dist.] Aug. 28, 2012, no pet.) (mem. op.); *Banda*, 2010 WL 5463857, at *4–5. Our sister court's opinion in *Sanchez v. Leija*, upon which the Nosbil defendants rely, does not compel a

conclusion otherwise, because the plaintiff in that case did not present evidence that he experienced pain at the collision site or that he sought medical treatment immediately after the collision. *See Sanchez*, No. 01-19-00165-CV, 2020 WL 7349094, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.).

It is true, as the Nosbil defendants note, that Cantu's medical records show he has been diagnosed with conditions such as post-traumatic headaches, occipital neuralgia, and myofascial pain syndrome of the cervical spine. *See Lara v. Bui*, No. 01-21-00484-CV, 2023 WL 2249205, at *4–8 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, pet. denied) (mem. op.) (reversing jury award of past and future medical care expenses arising from diagnoses of "cervicalgia, lumbalgia, lumbar radiculopathy, and two herniated discs" because plaintiff did not present expert medical testimony explaining how and why collision caused those injuries). But the Nosbil defendants' motion for summary judgment did not challenge Cantu's ability to present expert medical evidence that the collision caused specific conditions. *See, e.g.*, *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (summary judgment cannot be affirmed on grounds not raised in motion itself); *cf. Orta v. SN Operating, LLC*, 690 S.W.3d 730, 734, 739 (Tex. App.—San Antonio 2024, no pet.) (affirming no-evidence summary judgment where written motions specifically argued that expert medical evidence was necessary to raise fact question on causation). Instead, the motion argued that there was no evidence the collision proximately caused any damages at all. On this record and under the supreme court's analysis in *Guevara*, we must reject that argument. *See Guevara*, 247 S.W.3d at 667–69. Consequently, the Nosbil defendants did not establish that they were entitled to a no-evidence summary judgment on the causation or damages elements of Cantu's negligence claim.

D. <u>Conclusion</u>

Based on the evidence the trial court actually considered, we sustain Cantu's second issue and reverse the no-evidence summary judgment as to Cantu's ordinary negligence claims against the Nosbil defendants. Because we have reversed the summary judgment based on the summary judgment evidence the trial court actually considered, we need not consider Cantu's first issue challenging the trial court's evidentiary rulings. TEX. R. APP. P. 47.1.

***Judgment in Favor of the Insurance Defendants***

In his third issue, Cantu contends the trial court erred by rendering a judgment in favor of the insurance defendants. The trial court's order does not explicitly render judgment in favor of the insurance defendants, but it purports to be a "final order" that "disposes of all parties and all claims" and denies all relief not granted in the order. Because the order contains "a clear and unequivocal statement of finality," it is a final judgment "even if review of the record would undermine finality." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 800–01 (Tex. 2020).

The record in this case cannot sustain a judgment in favor of the insurance defendants. While the insurance defendants filed a joint motion for summary judgment, the record does not show that motion was ever set for hearing. Consequently, their joint motion "could not have been considered by the trial court" and was not a proper basis for judgment in their favor. *See Comm'rs Ct. of Wise Cnty. v. Mastropiero*, No. 02-22-00383-CV, 2023 WL 3017941, at *5–6 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op.). Because the trial court's judgment in favor of the insurance defendants was "entered without either a trial on the merits or a hearing on a dispositive motion," it must be reversed. *Id.* We therefore sustain Cantu's third issue.

## CONCLUSION

We affirm the summary judgment as Cantu's negligence per se, negligent hiring, training, and retention, and negligent entrustment claims. We reverse the summary judgment as to Cantu's ordinary negligence claims and his claims against the insurance defendants, and we remand this matter for further proceedings consistent with this opinion.


Lori I. Valenzuela, Justice