**Affirmed and Opinion Filed June 15, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00733-CV

**JAMES O. ROGERS, WILLIAM M. BURMEISTER,
CONSERVATIVE CARE, INC., AND CARE AFFILIATES, INC., Appellants
V.
VICTOR B. ZANETTI, CHARLES PERRY, AND ANDREWS KURTH LLP, Appellees**

**On Appeal from the County Court at Law No. 2
Dallas County, Texas
Trial Court Cause No. CC-12-02007-B**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

Appellants (the "Clients") sued appellees (the "Lawyers") for legal malpractice and breach of fiduciary duty. The Lawyers won a take-nothing summary judgment. In two issues, the Clients argue that (i) the trial court erred by striking one of their summary judgment affidavits and (ii) the trial court erred by granting summary judgment. The principal question on appeal is whether the Clients raised a genuine fact issue on the causation element. We conclude that they did not and accordingly affirm.

# I. BACKGROUND

## A. Factual Background

We draw the following factual allegations from the Clients' live petition. This case centers on a company called Alexander & Pucci, L.L.C., d/b/a Accent Home Health ("Accent"). Daniel Alexander, his wife Leslie, and Judith Pucci ("the Alexanders") formed Accent in 2002.

Appellant James O. Rogers became interested in investing in, and providing management services to, Accent.

Appellee Victor Zanetti, an attorney with appellee Andrews Kurth, LLP, represented the Clients and drafted an Investment Agreement that the Clients and the Alexanders executed. Under the Agreement, the Clients acquired 80% of Accent.

Rogers was added as a signatory to Accent's bank account, and he opened new bank accounts for Accent.

Appellant William Burmeister handled Accent's accounts payable.

A dispute arose between the Clients and the Alexanders, and the Alexanders ultimately sued the Clients for misallocating Accent funds. The Alexanders asserted fraud and fiduciary breach claims, and they sought to void the Investment Agreement.

The Clients asked Zanetti to refer them to a lawyer to defend them in the *Alexander* lawsuit. Zanetti referred them to appellee Charles L. Perry, who was Zanetti's partner at Andrews Kurth. Perry defended the Clients for some time. When Andrews Kurth eventually suggested that the Clients should get new lawyers, the Clients did so.

The *Alexander* case went to trial. The jury found that the Clients committed fraud and breached fiduciary duties and that the damages were in the millions of dollars. In the resulting judgment against the Clients, the trial court also ruled that the Investment Agreement was void.

The Clients appealed the judgment, and we affirmed. *See Rogers v. Alexander*, 244 S.W.3d 370 (Tex. App.—Dallas 2007, pet. denied).

**B.     Procedural History**

The Clients sued the Lawyers in 2012.  They alleged that Perry owed conflicting duties to the Clients on one hand and to Zanetti and Andrews Kurth on the other.  They further alleged that Perry mishandled their defense in several respects, such as (1) by failing to designate a rebuttal damages expert, (2) by having the Clients create certain documents and then misleading opposing counsel about how they were created, as well as by certain other pretrial and discovery misconduct, and (3) by failing to tell the Clients that Perry received a $450,000 settlement offer from the Alexanders "that would have released the [Clients] from liability and given them control over Accent."  They also alleged that the Lawyers negligently failed to draft an enforceable agreement.  In their live pleading, they asserted claims for negligence and for breach of fiduciary duty.  They sought actual damages and disgorgement/equitable fee forfeiture as remedies.

The trial court disposed of the case on the Lawyers' revised summary judgment motion in which the Lawyers argued, among other grounds, (1) no evidence of causation, (2) collateral estoppel, (3) the unlawful-acts doctrine, (4) the statute of limitations, and (5) impermissible fracturing of negligence claims into fiduciary breach claims.  The Clients responded seven days before the hearing.  Three days before the hearing, the Lawyers filed a reply brief and a separate instrument entitled "Defendants' Objections to and Motion to Strike the Affidavit of Christopher Kalis."  The Kalis affidavit was part of the Clients' summary judgment evidence.

The trial court granted the Lawyers' summary judgment motion without specifying the grounds.  The court also granted their motion to strike Kalis's affidavit.  The Clients then perfected this appeal.

## II. ANALYSIS

The Clients' first issue argues that the trial court erred by striking Kalis's affidavit. Their second issue argues that the trial court erred by granting summary judgment. We focus on the second issue, addressing the first as it concerns our analysis of the second issue.[1]

### A. Standard of Review

We review a summary judgment de novo. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.).

When we review a no-evidence summary judgment, we inquire whether the nonmovant adduced sufficient evidence to raise a genuine issue of material fact on the challenged elements. *Id.* We review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the nonmovant provided more than a scintilla of probative evidence on each challenged element, the no-evidence summary judgment must be reversed. *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex. App.—Dallas 2012, no pet.). Conclusory testimony does not raise a genuine issue of fact. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment.") (internal quotations and citation omitted).

Because the summary judgment order does not specify the grounds on which summary judgment was granted, we will affirm if any of the Lawyers' grounds are meritorious. *See Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 922–23 (Tex. App.—Dallas 2009, no pet.). We will affirm the judgment as to a particular claim if the Clients do not present argument challenging all

---

[1] The Clients list three issues in the "Issues Presented" section of their brief, but they organize the argument section of their brief under two issues. We will analyze the issues as presented in the argument section of their brief.

grounds on which summary judgment could have been granted on that claim. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.).

**B.      Did the trial court erroneously grant summary judgment on the Clients' negligence claims based on lack of causation evidence?**

### 1.      Applicable Law

A legal-malpractice claim is based on negligence, the elements of which are (1) a duty, (2) a breach of that duty, (3) the breach proximately caused injury to the plaintiff, and (4) damages occurred. *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 847 (Tex. App.—Dallas 2013, no pet.); *see also Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (per curiam) ("Proximate cause has two components: (1) foreseeability and (2) cause-in-fact."). When the plaintiff claims that the attorney's negligence caused a bad outcome in prior litigation, the plaintiff must prove that it would have prevailed in the underlying case but for its attorney's negligence. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009); *Kelley & Witherspoon*, 401 S.W.3d at 847. This is the "suit-within-a-suit" requirement. 401 S.W.3d at 847.

When the causal link between the alleged negligence and the bad litigation outcome is beyond the jury's common understanding, expert causation testimony is necessary. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004).

### 2.      Application of the Law to the Facts

The Clients divide their negligence claims into five categories of alleged malpractice. Three categories concern the Lawyers' tactics in defending the *Alexander* lawsuit. The fourth concerns Zanetti's alleged negligence in drafting the Investment Agreement, and the fifth concerns the Lawyers' alleged failure to communicate the Alexanders' settlement offer.

### a. Did a failure to designate a damages expert injure the Clients?

The Clients argue that the Lawyers negligently failed to designate a damages expert to rebut the Alexanders' damages model, and that this negligence caused injury because the *Alexander* jury would have returned lower damages findings had the Lawyers designated a rebuttal damages expert.

As a threshold matter, the Clients argue that we must reverse and remand as to this liability theory because the Lawyers did not specifically attack it in their summary judgment motion. For support, they cite *McConnell v. Southside Independent School District*, 858 S.W.2d 337 (Tex. 1993). For the reasons discussed below, this argument lacks merit.

In a no-evidence motion, the movant must state the elements of each attacked claim or defense for which there is no evidence. *See* TEX. R. CIV. P. 166a(i). The movant, however, need not parse all of the factual theories that might support a particular claim, as the Clients suggest. *See Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 200 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("[A] specific attack on the evidentiary components that might prove a certain element is unnecessary, as long as the element itself is specifically challenged."); *accord Hoover v. Larkin*, 196 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (no-evidence attack on "causation" covered multiple damages theories).

By attacking the causation element of the Clients' negligence claims, the Lawyers shifted the burden to the Clients to adduce enough evidence to raise a genuine issue of material fact on that element. *McConnell* holds that summary judgment grounds must be stated in the summary judgment motion itself and not in a separate brief. 858 S.W.2d at 341 (plurality op.); *id*. at 344 (Gonzalez, J., concurring). But *McConnell* does not require that a no evidence motion must specifically attack every factual theory within a nonmovant's claim.

We next consider if there was a genuine fact issue regarding whether the Lawyers' failure to designate a damages expert caused the Clients to suffer a larger judgment than they otherwise would have.

**Hahn**

The Clients rely on Allen D. Hahn's deposition testimony to the effect that Accent, the company at issue, was worth $395,000 instead of roughly $2.5 million as the Alexanders' expert testified at trial. Had testimony like Hahn's been put before the *Alexander* jury, the Clients contend, the jury probably would have believed that testimony instead of the Alexanders' evidence, and the judgment against the Clients would have been smaller. We conclude that Hahn's testimony presents no evidence of but for causation.

First, Hahn offers no opinion on the ultimate causation question—would the *Alexander* jury have returned a lower damages finding had it heard Hahn's testimony to rebut the Alexanders' damages evidence. His testimony may raise an inference that the Lawyers could have found an expert witness (like Hahn) to contradict the Alexanders' valuation evidence, but it is speculation regarding whether such a witness would have influenced the jury enough to change the verdict. The Clients offered no evidence to that effect.

Next, because Hahn's testimony about Accent's value is conclusory, it constitutes no evidence of Accent's actual value. *See Elizondo*, 415 S.W.3d at 264 ("A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment.") (footnote and internal quotations omitted). The Clients attached eleven pages of Hahn's deposition to their summary judgment response. Although that excerpt contains his ultimate opinion about Accent's value, it does not contain any factual basis for that opinion, thereby rendering his valuation opinion a bare conclusion.

Finally, the deposition excerpt indicates that Hahn prepared an expert report, but that report is not part of the summary judgment record.

Because Hahn's conclusory valuation opinion constitutes no evidence of Accent's actual value, it is also no evidence of but for causation in this legal malpractice case and therefore does not raise a genuine issue of material fact.

**Sifford**

The Clients also rely on deposition testimony from attorney Lewis Sifford, who was asked to identify any acts or omissions by the Lawyers that led the *Alexander* jury to find as it did. As part of his answer, Sifford testified that, "And had they [the Lawyers] given the advice they should have given, the clients would not have been in that position and would not have suffered that judgment." This vague testimony is no evidence that designating a rebuttal damages expert would have caused a better result for the Clients, but it amounts to a conclusion that the Lawyers' negligence caused the adverse judgment. *See Riner v. Neumann*, 353 S.W.3d 312, 321 (Tex. App.—Dallas 2011, no pet.) ("A conclusory statement is one that does not provide the underlying facts in support of the conclusion."); *see also Elizondo*, 415 S.W.3d at 264 (conclusory expert opinion will not defeat summary judgment). Sifford's testimony thus did not raise a genuine issue of material fact.

**Marketos**

The Clients also rely on deposition testimony by the Alexanders' trial attorney, Peter Marketos, who said that the failure to designate a rebuttal damages expert harmed the Clients at the *Alexander* trial. According to Marketos, a juror called him after the trial and divulged the jury's entire thought process. The juror said that during deliberations the foreman asked whether the jury was awarding too much in damages, "but that the jury concluded that they had no competing evidence with Mr. Athickal's testimony [the Alexanders' expert], and so they

accepted—ultimately agreed to accept Mr. Athickal's testimony to the penny." Marketos later added that, "The failure to designate a competing expert was a significant contributing factor to the jury's verdict, in my opinion." Although Marketos's opinion is supported by some factual explanation, we conclude that it is speculative as to what the *Alexander* jury would have decided had the Clients provided rebuttal testimony from a damages expert and therefore does not raise a genuine issue of material fact. *See Thompson & Knight LLP v. Patriot Exploration, LLC*, 444 S.W.3d 157, 162 (Tex. App.—Dallas 2014, no pet.) (expert testimony that is conclusory, speculative, or based on assumed facts contrary to the evidence is legally insufficient to prove the facts testified to).

Even had the Lawyers designated a damages expert, the *Alexander* jury would have had to weigh the competing experts' credibility, and it could have resolved the conflicting evidence in favor of the Alexanders' expert. Marketos's testimony does not explain explain why the jury, more likely than not, would have credited the Clients' expert (whoever he or she might have been) over the Alexanders' expert. Accordingly, his testimony was conclusory and thus did not raise a genuine issue of material fact. *See Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 186–88 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (attorney testimony that assertion of "seat-belt defense" would have resulted in a defense verdict was conclusory).

### Kalis

The Clients next rely on the Kalis affidavit, which the trial court struck based on the Lawyers' motion. The Clients' first issue posits that the trial court erred by striking that affidavit, either because the motion to strike was not set for hearing or because the affidavit was not objectionable. The Clients argue in the alternative that they were entitled to an opportunity to amend the affidavit. For purposes of our analysis, we assume without deciding that the trial court erred by hearing the motion to strike. We conclude that any such error was harmless

because that affidavit is conclusory as to causation, and thus no trial court objection was required. *See Bartz v. Randall*, 396 S.W.3d 647, 650 (Tex. App.—Dallas 2013, no pet.) (conclusory affidavit can be attacked for the first time on appeal).

Specifically, the Clients rely on the following passages from that affidavit:

[T]he applicable standard of care . . . required the designation of a qualified expert on damages . . . who could truthfully opine that [the Alexanders'] damage claims . . . were overly aggressive, unreasonable, and bore no reasonable relationship to the facts of that case.

. . .

[I]t is my professional opinion that the jury awarded an amount of damages that were not supported by the evidence, but which could not be controverted by [the Clients] because Mr. Perry failed to designate a competent expert to controvert [the Alexanders'] damage evidence, upon which the jury could consider in reaching its verdict in that cause.

. . .

[I]t is also my professional opinion that the proximate cause of the enormous verdict and the ensuing judgment was Mr. Perry's failure to designate a controverting damages expert, in breach of his standard of care.

This is conclusory causation testimony. Kalis provides no facts supporting his conclusion that the *Alexander* jury probably would have agreed with a hypothetical rebuttal damages expert rather than the Alexanders' damages expert. His testimony is thus no evidence and does not raise a genuine issue of material fact. *See Elizondo*, 415 S.W.3d at 264 (conclusory expert opinion will not defeat summary judgment). And, because conclusory statements are substantive defects, the Clients were not entitled to an opportunity to amend Kalis's affidavit. *See Threlkeld v. Urech*, 329 S.W.3d 84, 89 (Tex. App.—Dallas 2010, pet. denied).

In sum, we conclude that the Clients offered no probative evidence that the Lawyers' failure to designate a damages expert was a but for cause of any damages and therefore did not raise a genuine issue of material fact as to causation.

–10–

### b. Did the *Alexander* trial judge's sanctions cause injury to the Clients?

The Clients argue that the Lawyers falsified evidence during the discovery process, misled the court and opposing counsel, and eventually caused the trial judge to impose sanctions against Rogers. The Clients further assert that they would have prevailed at trial but for the Lawyers' unethical behavior. As discussed below, we conclude that the Clients' evidence does not create a genuine issue of material fact as to causation on this liability theory.

### Kalis

The clients cite Kalis's deposition testimony that the Lawyers negligently misrepresented facts to the court that resulted in sanctions. But this evidence does not say what caused the adverse judgment and thus does not raise a genuine issue of material fact. *See Alexander v. Turtur & Assocs.*, 146 S.W.3d at 119 ("Breach of the standard of care and causation are separate inquiries, . . . and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other."). The Clients also cite the sanction order and a hearing transcript in which the *Alexander* trial judge expressed his intent to assess attorney's fees against and otherwise sanction the Clients. Again, this evidence does not raise a genuine issue of material fact regarding a causal connection between the Lawyers' conduct and the *Alexander* trial result.

The Clients also rely on Kalis's affidavit on this issue. As we said previously, we will assume the trial court erred by striking the affidavit based on the Lawyers' motion to strike. The error, if any, was harmless because Kalis's causation opinions regarding this liability theory are conclusory and are thus no evidence. Kalis testified:

> [I]t is my professional opinion that Mr. Perry's acts in presenting documents that Mr. Perry knew were false, and created at his request, representing to opposing counsel that these historical documents had been previously produced to [the Alexanders'] counsel, and failure to designate a damages expert, were each a proximate cause of the jury verdict against [the Clients] therein.
>
> . . . It is also my professional opinion that, had Mr. Perry not irreparably jaundiced the trial court's opinion of [the Clients] through his conduct that

–11–

resulted in the above-described sanctions, the judgment would not have occurred. It is also my professional opinion that, as a result of Mr. Perry's breach of the standard of care, neither Mr. Perry nor Mr. Burmeister had any credibility with either the court or the jury.

Because these conclusory opinions are not supported by factual explanation, they are no evidence of but for causation and do not raise a genuine issue of material fact. *See Cooper v. Harris*, 329 S.W.3d 898, 903–04 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (expert testimony about causation was conclusory).

### Marketos

The Clients cite Marketos's deposition testimony that he believed the sanctions process diminished the Lawyers' credibility before the *Alexander* trial court. This testimony thus does not raise a genuine issue of material fact regarding causation of the jury's verdict or the ultimate judgment. Marketos also said, "If in fact, Mr. Perry instructed Mr. Burmeister to create the documents contained in Exhibit 60 and then presented them to me as being something other than what they were, my answer would be that was a significant contributing factor to the jury's verdict, in my opinion." But Marketos did not explain how Perry's assumed conduct affected the jury's verdict. Nor did he explain how the jury could have known of Perry's assumed conduct. Accordingly, his causation opinion is a conclusion, amounts to no evidence, and does not raise a genuine issue of material fact. *See Elizondo*, 415 S.W.3d at 264 (conclusory expert opinion will not defeat summary judgment).

The Clients thus failed to raise a genuine fact issue that the Lawyers' alleged unethical conduct was a but for cause of any damages.

### c. Should there have been a proportionate responsibility defense?

The Clients argue that the Lawyers should have (i) asserted a proportionate responsibility defense, (ii) designated Zanetti as a witness to help exculpate the Clients, and (iii) designated themselves as responsible third parties in the *Alexander* case. They assert that the Lawyers'

–12–

failure to do these things was negligent, and that the evidence raised a genuine fact issue that one or more of these omissions proximately caused the Clients' damages.[2]

The Clients cite a single deposition answer by Kalis to support this argument. In that answer, however, Kalis says only that Zanetti "could have at least been a party" and should have withdrawn from representing the Clients. His answer says nothing about causation and thus does not raise a genuine fact issue on the causation element.

### d. Did negligent drafting injure the Clients?

The Clients argue that Zanetti negligently drafted the Investment Agreement, resulting in a void agreement. They further argue that had Zanetti drafted an enforceable agreement, "most, if not all" of the Clients' actions in running Accent would have been authorized, and the Alexanders' fraud claims against the Clients would have failed. Thus, according to the Clients, Zanetti's negligent drafting proximately caused the adverse *Alexander* judgment.

We conclude, however, that the Clients' evidence does not raise a genuine fact issue on causation as to this liability theory. The *Alexander* jury found that Rogers and Burmeister each defrauded all of the Alexanders, causing each of them $831,203.89 in damages. The fraud question was submitted in broad form, so it was not tied to any particular factual theory. Consequently, we cannot tell from the jury charge whether the Investment Agreement's invalidity related to the jury's fraud findings. Indeed, there is no indication that the jury was told that the Agreement was or might be void.

The Clients themselves recognize that the jury charge is uninformative, stating in their appellate brief, "The jury's finding of fraud ***could have been*** solely based on actions of the Appellants that would have been authorized under the terms of the Agreement." (Emphasis

---

[2] The Clients ask us to consider these liability theories under the heading of "negligence" if we conclude they are improperly fractured negligence claims rather than proper fiduciary breach claims. Although we do not reach the fracturing argument, we address these liability theories as negligence theories for the sake of completeness.

added.)  Even if this were true, the fraud findings also could have been based on other conduct. The jury charge is no evidence that a differently drafted Investment Agreement would have produced a better result for the Clients in the *Alexander* case.

We have examined the other evidence the Clients cite as supporting this argument, and none of it raises a genuine fact issue as to causation.

**Sifford**

The Clients identify Lewis Sifford's deposition, where he was asked how an enforceable Agreement would have insulated Rogers or Burmeister from a finding of intentional fraud. Sifford answered:

> Well, because I think the jury could well have concluded that evidence of intentional fraud would have been that they were acting inconsistent with the Investment Agreement or the agreement between the parties.  So obviously if you had a—a valid Investment Agreement that they were responding to and thought they were functioning properly under it, that would have been a defense to the fraud claims by the Alexander, Pucci plaintiffs.

This testimony amounts to mere speculation as to why the jury found that Rogers and Burmeister committed fraud.  Because Sifford does not explain how an enforceable Investment Agreement would have been a defense to the Alexanders' fraud claims, his testimony is a bare conclusion and is no causation evidence.  *See Thompson & Knight LLP*, 444 S.W.3d at 162 (expert testimony that is conclusory, speculative, or based on assumed facts contrary to the evidence is legally insufficient to prove the facts testified to).

The Clients also cite Sifford's deposition testimony for the premise that the Investment Agreement was unenforceable because Rogers's obligations under it were discretionary and thus illusory.  Again, this evidence does not raise a genuine issue of material fact regarding whether Zanetti's drafting of the Agreement caused the Clients' alleged damages.

–14–

## Woodard

The Clients also rely on deposition testimony by attorney Len Woodard, who appears to be one of the Clients' expert witnesses in this case. Woodard criticized the Investment Agreement for containing conditional language that led the *Alexander* trial court and this Court to hold that the Agreement was illusory and unenforceable. *See Rogers*, 244 S.W.3d at 382. There is, however, nothing in Woodard's testimony showing that this defect was a but for cause of the fraud findings against the Clients. Although he testified that Zanetti's negligent drafting "threw another log on the fire" in the *Alexander* case, he insisted that causation was outside the scope of his opinions about the case:

> Q. Okay. You can't say though that that purported breach of the standard of care is what caused the judgment to be entered against Mr. Rogers and Mr. Burmeister, right?
>
> A. Causation is outside the scope.
>
> Q. Okay. So regardless of any supposed breach of the standard of care, you can't tell the jury that that supposed breach made any difference in the actual outcome of the underlying case, right?
>
> [Objection omitted.]
>
> A. I would phrase it that at a—that at a minimum, it threw another log on the fire.
>
> Q. Okay. But you can't say that this supposed breach of the standard of care actually proximately caused the negative result in the underlying case, it's outside your scope?
>
> A. It's outside the scope.

This testimony is no evidence of a but for causal connection between Zanetti's agreement drafting and the Clients' alleged damages.

For the above reasons, we conclude that the Clients did not raise a genuine issue of material fact that the Investment Agreement drafting caused the fraud findings against them or the resulting damages.

### e. Did the Lawyers' failure to communicate a settlement offer to the Clients cause the Clients' damages?

The Clients argue that (i) the Lawyers did not tell them that the Alexanders offered to settle the case and relinquish Accent to Rogers for $450,000 and (ii) this failure injured them. They contend that their evidence of these facts raised a genuine issue of material fact on causation sufficient to defeat summary judgment.

At the outset, the Clients argue that the judgment must be reversed as to this liability theory because the Lawyers' summary judgment motion did not specifically attack it. As discussed above, the Lawyers' no-evidence challenge to the causation element put the Clients to their proof on causation, and the Lawyers were not required to attack any specific factual theory of liability. *See* TEX. R. CIV. P. 166a(i); *Gary E. Patterson & Assocs.*, 264 S.W.3d at 200.

The Clients rely on deposition testimony from the Alexanders' attorney, Peter Marketos, that he sent a settlement demand to the Clients soon after the suit was filed and got no response. The record contains the settlement offer itself, which was dated August 6, 2003. The Alexanders offered to let Rogers continue using the Accent name and to execute mutual releases of all claims if Rogers paid them $450,000 immediately upon executing the settlement agreement. Marketos said the demand was a "starting point," but he could not remember how much authority he had to go below $450,000.

Rogers testified by affidavit that the Lawyers did not communicate the settlement offer to him and that he did not learn about it until 2013, after the *Alexander* litigation concluded and this malpractice case began. Rogers further said, "Had I known that I could have settled the case with the Alexanders and Pucci and received control of Accent for $450,000, I would have instructed my attorneys to negotiate the best possible resolution and release without incurring the time or expense of litigation." He also said that the Alexanders later made settlement demands of over a million dollars after the trial court sanctioned him.

–16–

We conclude that the Clients' evidence does not raise a genuine issue of material fact on causation because they adduced no evidence that they and the Alexanders would have reached an agreement. At best, Marketos's testimony raises an inference that he had some authority to settle the case for less than $450,000. Rogers testified only that he would have tried to settle the case had he known about the settlement offer. The Clients adduced no evidence raising a genuine fact issue that a settlement agreement actually would have been reached because there is no evidence proving that the same terms would have been acceptable to both the Alexanders and the Clients.

Furthermore, this case is analogous to where a former claimant sues its former attorneys for negligently causing its claim to be lost. To prove causation, the claimant must prove not only that it would have prevailed on its claim without the negligence but also that the lost judgment would have been collectible from the underlying defendant. *See Webb v. Stockford*, 331 S.W.3d 169, 173, 177 (Tex. App.—Dallas 2011, pet. denied). Absent evidence of collectability, the claim fails. *See id*. at 177–78 (no evidence of collectability meant no evidence of causation). Here, the Clients contend that they would have avoided a much larger liability and acquired Accent as well if they had known about the settlement offer. For this to be true, they would have had to both reach a settlement and perform its terms. But they adduced no evidence that they could pay the Alexanders $450,000, as the actual settlement offer demanded, or any lesser amount that the Alexanders would have accepted. Without such evidence, there is a fatal gap in the but for cause evidence.

### 3.    Conclusion

For the reasons discussed above, we conclude that the Clients did not raise a genuine issue of material fact as to the causation element of their negligence claims and disagree with their second issue as to those claims.

–17–

**C.      Did the trial court erroneously dismiss the Clients' fiduciary breach claims?**

We turn next to the Clients' claims for breach of fiduciary duty.  The Clients sought actual damages, disgorgement, and equitable fee forfeiture as remedies.  *See generally Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) (fee forfeiture as a remedy for an attorney's fiduciary breach).

**1.      Actual Damages**

Causation is an element of the Clients' claims seeking actual damages as a remedy for their fiduciary breach claims.  *See Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 189 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("[Suit-within-a-suit] causation is an element of . . . a breach of fiduciary duty claim for damages based on representation in underlying litigation.") (footnote and citations omitted); *see also Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.) (fiduciary breach claim requires proof that "the defendant's breach resulted in injury to the plaintiff or benefit to the defendant").  The Lawyers' summary judgment motion contained a no-evidence challenge to causation for all of the Clients' claims.  The Lawyers stated, "Plaintiffs have no evidence to support the causation element of their claims," and "Plaintiffs cannot prove causation, so all claims must be dismissed."  They also argued that the Clients were obliged to produce expert testimony supporting the causation element of their fiduciary breach claims, citing cases such as *Finger v. Ray*, 326 S.W.3d 285 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

To recover actual damages for the Lawyers' alleged fiduciary breaches, the Clients had to prove suit-within-a-suit causation, like they had to prove that causation for their negligence claims.  *See Taylor*, 395 S.W.3d at 189; *Finger*, 326 S.W.3d at 291–92.  Because we have already held that the Clients did not raise a genuine issue of material fact on causation regarding those claims, we reach the same conclusion as to their fiduciary breach actual damages claims.

**2. Fee Forfeiture/Disgorgement[3]**

Because actual damages are not required for fee forfeiture, *Burrow*, 997 S.W.2d at 240, causation is not an element for recovery of this fiduciary breach remedy. *See Taylor*, 395 S.W.3d at 189 n.6. The Lawyers' summary judgment motion included the following ground: "There is no evidence that Andrews Kurth received fees from Plaintiffs. As a matter of law, Plaintiffs may not disgorge fees they never paid." The Clients make no argument on appeal challenging this summary judgment ground attacking their fee forfeiture claim. We thus affirm the judgment as to that claim. *See Adams*, 154 S.W.3d at 875.

For these reasons, we conclude that the Clients have not shown reversible error in the summary judgment on their fiduciary breach claims.

### III. DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment.

/Bill Whitehill/
140733F.P05                                           BILL WHITEHILL
                                                      JUSTICE

---

[3] The Clients do not argue that the disgorgement and fee forfeiture remedies are distinct, so we treat them together. *See McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 904–05 (Tex. App.—Dallas 2014, pet. denied) (referring to "the equitable remedy of disgorgement or fee forfeiture").



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES O. ROGERS, WILLIAM M. BURMEISTER, CONSERVATIVE CARE, INC., AND CARE AFFILIATES, INC., Appellants

No. 05-14-00733-CV      V.

VICTOR B. ZANETTI, CHARLES PERRY, AND ANDREWS KURTH LLP, Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-12-02007-B.
Opinion delivered by Justice Whitehill. Justices Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Victor B. Zanetti, Charles Perry, and Andrews Kurth LLP recover their costs of this appeal from appellants James O. Rogers, William M. Burmeister, Conservative Care, Inc., and Care Affiliates, Inc.

Judgment entered June 15, 2015.