**AFFIRMED; and Opinion Filed December 11, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01252-CV**

**STEPHANIE JONES, Appellant**
**V.**
**GUILDFORD LLC D/B/A KELLER WILLIAMS REALTY AND JEREMY**
**WAGES, Appellees**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-03696-2019**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Carlyle and Kennedy
Opinion by Chief Justice Burns

Stephanie Jones appeals the trial court's final judgment in this action, which she initiated against her former real estate brokers, appellees Guildford LLC d/b/a Keller Williams Realty (Keller Williams) and Jeremy Wages. In five issues, Jones asserts that the trial court erred in granting appellees' summary judgment motions and dismissing her claims against appellees, ordering that appellees recover $20,400 in actual damages on their counterclaim against Jones, and awarding appellees attorneys' fees. For the following reasons, we affirm.

## Background

Jones and appellees entered into a residential listing agreement, which granted appellees the exclusive right to sell Jones's home (the property) in McKinney, Texas. Wages served as Jones's sales agent. Per the listing agreement, which ran from May 25, 2015, to December 31, 2015, Jones instructed appellees to market the property for $350,000 and agreed to pay appellees a commission of six percent of the sales price once the commission was "earned" and became "payable."

On July 11, Jones entered into an "as is" sales contract for the property with Gurwinder Grewal and Permeet Kaur (buyers). Jones agreed to a sales price of $340,000 and a closing date of August 10. The buyers elected to have the property inspected and, following the inspection, requested that Jones complete several repairs, including some to the roof, prior to closing. On July 20, the buyers' agent e-mailed a copy of a proposed repair amendment to Wages, who forwarded it to Jones. Jones advised that she was "having second thoughts" about selling and expressed concern that the repairs would "cost approximately $2000." Wages responded that the repairs would not be more than $1000. He also informed Jones that the buyers had asked for another week to close. Jones replied that she was "saying no to the repairs because [she] didn't haggle on the price," but agreed to extend the closing.

On July 23, Jones asked Wages if he had heard back from the buyers' agent regarding the repairs. Wages advised that he was "covering" the roof repairs and

the buyers were covering the rest. Jones responded, "Oh okay," and the next day she and the buyers executed an amendment to extend closing to August 19.

On July 26, Jones texted Wages that, due to a "change in [her] circumstance" she had "decided it's probably not a good time to sell [her] house." Wages responded, "[w]e don't have the ability to terminate the buyer." Jones advised that she was going to contact her attorney because she was "not going to sell." On July 28, Jones confirmed that she was not going through with the sale. Jones apologized and explained that her financial situation had changed; she was no longer employed and no longer had the option of living with the person with whom she planned to live. Wages informed the buyer's agent of Jones's decision. The buyers sued Jones for specific performance, ultimately accepting a payment in settlement.

Jones then brought this action against appellees. She alleged claims for breach of contract, asserting the sales contract was not a valid, enforceable contract and that appellees breached the listing agreement and/or sales contract, breach of fiduciary duty, fraudulent inducement, and statutory fraud. Appellees filed an answer and brought a counterclaim against Jones for breach of the listing agreement, seeking its commission and attorneys' fees.

Appellees filed a series of interlocutory summary judgment motions, which the trial court granted. In its first order, the trial court rendered a declaratory judgment that the sales contract was a valid and enforceable contract from July 11, when the parties signed it, through August 19, when the transaction was set to close.

In two subsequent orders, the trial court ruled in appellees' favor on all of Jones's affirmative claims, dismissing the claims with prejudice and awarding appellees attorneys' fees incurred in defending against those claims and contingent enforcement and appellate attorneys' fees. Jones filed, and the trial court denied, a motion for reconsideration of the order dismissing Jones's claims.

Appellees then filed a summary judgment motion on their counterclaim for Jones's breach of the listing agreement. Jones also filed a summary judgment motion on the counterclaim, which the trial court denied. The trial court made a docket entry indicating that it was going to grant appellees' summary judgment motion and, thereafter, held a short bench trial on appellees' request for attorneys' fees related to the counterclaim. Jones filed a motion for reconsideration of the trial court's decision to grant the motion. The trial court did not rule on the motion, but entered a final judgment incorporating its previous summary judgment orders, formally granting summary judgment in favor of appellees on their counterclaim, and awarding appellees $20,400 in actual damages. The trial court also awarded appellees attorneys' fees, including contingent enforcement and appellate attorneys' fees, related to the prosecution of their counterclaim.

This appeal followed. Jones challenges the summary judgments in favor of appellees on her affirmative claims for breach of fiduciary duty and breach of contract and appellees' counterclaim and the related attorneys' fees awards.[1]

## Standard of Review

We review a trial court's decision to grant summary judgment de novo. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). If the trial court grants summary judgment without specifying the grounds for the ruling, we must affirm the judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If a party moves for summary judgment on both traditional and no-evidence grounds, we generally address the no-evidence motion first. *See id.* If the challenge to the no-evidence motion fails, we need not consider the traditional motion. *Id.*

A movant may obtain a no-evidence summary judgment, after adequate time for discovery, when there is no evidence of one or more of the essential elements of a claim on which an adverse party would have the burden of proof at trial. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citing TEX. R. CIV. P. 166a(i)). When a no-evidence motion is properly filed, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact on each challenged element. *Id.* We "review the evidence presented by the motion and

---

[1] Although the trial court also granted summary judgment in favor of appellees on Jones's claims for fraudulent inducement and statutory fraud, she does not appeal the judgment with respect to those claims.

response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006)). We sustain a no-evidence challenge when the evidence offered to prove a vital fact is no more than a mere scintilla. *See Merriman*, 407 S.W.3d at 248. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

Under the traditional summary judgment standard, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Hansen*, 525 S.W.3d at 681. When reviewing a traditional summary judgment, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in favor of the nonmovant, and take as true all evidence favorable to the nonmovant. *Hansen*, 525 S.W.3d at 680.

A plaintiff moving for summary judgment must prove that it is entitled to summary judgment as a matter of law on each element of its cause of action. *Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied). A defendant is entitled to summary judgment if it conclusively

–6–

disproves at least one essential element of the plaintiff's claim or conclusively establishes each element of an affirmative defense. *Ward v. Stanford*, 443 S.W.3d 334, 342 (Tex. App.—Dallas 2014, pet. denied). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). A genuine issue of material fact exists if the nonmovant produces more than a scintilla of probative evidence regarding the challenged element. *Ward*, 443 S.W.3d at 342.

### Appellees' Claim for Breach of Listing Agreement

In her first issue, Jones contends the trial court erred in granting appellees' traditional motion for summary judgment on appellees' counterclaim for breach of the listing agreement.[2] Citing paragraph 15 of the listing agreement, Jones argues that, because she terminated the listing agreement and did not sell the property to the buyers within six months, she did not owe appellees a commission.

---

[2] Jones also asserts that the trial court erred when it denied her motion for reconsideration of its summary judgment ruling, but she does not address the denial other than to generally urge this Court to consider the arguments and evidence submitted in the motion, which was on file before the trial court signed the final judgment. Further, Jones's argument on appeal differs from the grounds asserted in her motion for reconsideration. To the extent she complains about the trial court's order denying the motion for reconsideration, she has waived the issue by failing to brief it and we will not address it. *See* TEX. R. APP. P. 38.1(i); *e.g.*, *RTLC AG Prod., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App.—Dallas 2006, no pet.). Nor will we address the arguments she urged in the motion for reconsideration, but does not urge on appeal.

To prevail on their counterclaim for breach of the listing agreement, appellees had to prove (1) a valid contract, (2) performance or tendered performance by appellees, (3) a breach by Jones, and (4) damages sustained by appellees as a result of Jones's breach. *See Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 625 (Tex. App.—Dallas 2020, no pet.). "A breach of contract occurs when a party fails to perform an act it has explicitly or impliedly promised to perform." *Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.). Whether a party has breached a contract is a legal question for the court if the facts of the parties' conduct are undisputed or conclusively established. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (per curiam).

To establish they were entitled to summary judgment on their counterclaim, appellees presented evidence that, pursuant to paragraph 5 of the listing agreement, (1) they earned a commission by procuring the buyers, who were ready, willing and able to buy the property at a price acceptable to Jones, (2) the commission became payable when Jones refused to sell the property, and (3) Jones breached the agreement by failing to pay that commission.

Paragraph 5 of the listing agreement provides for the seller to pay the broker six percent of the sales price as compensation when the compensation is earned and payable. Paragraph 5 defines earned and payable as follows:

B.     <u>Earned</u>: Broker's compensation is earned when any one of the following occurs during this Listing:

>    (1) Seller sells, exchanges, options, agrees to sell, agrees to exchange, or agrees to option the Property to anyone at any price on any terms;
>
>    (2) Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy the Property at the Listing Price or at any other price acceptable to Seller; or
>
>    (3) Seller breaches this Listing.
>
> C. Payable: Once earned, Broker's compensation is payable either during this Listing or after it ends at the earlier of:
>
>    (1) the closing and funding of any sale or exchange of all or part of the Property;
>
>    (2) Seller's refusal to sell the Property after Broker's compensation has been earned;
>
>    (3) Seller's breach of this Listing; or
>
>    (4) at such time as otherwise set forth in this Listing.

The summary judgment evidence establishes that appellees earned a broker's compensation under the listing agreement when Wages procured the buyers, who were ready, willing, and able to buy the property at a price acceptable to Jones. The buyers and Jones entered into the "as is" sales contract. The trial court rendered a declaratory judgment that the sales contract was a valid and enforceable contract, and Jones does not challenge that judgment on appeal. The fact that the buyers requested an amendment providing for Jones to pay for repairs neither rendered the sales contract invalid nor serves as evidence that the buyers were not ready, willing, and able to buy the property. *See, e.g.*, *Frady v. May*, 23 S.W.3d 558, 565 (Tex.

–9–

App.—Fort Worth 2000, pet. denied) ("If an enforceable contract results between buyer and seller, the latter necessarily accepts the former's readiness, willingness, and ability to perform, in the absence of a special agreement to the contrary"). Appellees' broker's compensation became payable under paragraph 5(C) when Jones refused to sell the property to the buyers, but Jones never paid appellees that compensation.

Jones, however, contends that paragraph 15, instead of paragraph 5, applies in this case. Paragraph 15 provides:

> *Either party can terminate the listing if they are unhappy. The Termination of Listing only requires the party canceling, the Seller(s) or the Agent, to sign the paperwork. If the seller terminates the listing agreement after a sales contract has been accepted and executed, . . . Keller Williams, is due a commission if that buyer purchases the house within 6 months of termination.

According to Jones, the summary judgment evidence established that she terminated the listing agreement and appellees were not due a commission.[3]

Jones, however, failed to bring any evidence to the trial court's attention in her summary judgment response to raise a fact issue on her termination of the listing

---

[3] Appellees respond that Jones has waived her argument by failing to first present it to the trial court. A nonmovant, in writing to the trial court, must fairly apprise the movant and the trial court of each theory the nonmovant contends should defeat a summary judgment motion. *See* TEX. R. CIV. P. 166a(c); *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022); *Shih v. Tamisiea*, 306 S.W.3d 939, 944 (Tex. App.—Dallas 2010, no pet.). The nonmovant's failure to expressly present those theories in the trial court waives the issue on appeal. *See FieldTurf USA*, 642 S.W.3d at 838. We agree that Jones's response did not clearly present the theory she advances in this appeal. Her response simply stated that she disputed whether she breached the listing agreement by failing to pay appellees' commission and referenced paragraph 15. The response made no further mention of paragraph 15; it did not set out any argument or identify any summary judgment evidence supporting its application. However, because Jones's response at least directed the trial court to paragraph 15, we will consider Jones's theory on appeal.

agreement. On appeal, she directs this Court to her and Wages's text messages "in which Jones clearly stated that she no longer wished to sell her house." But she made no attempt in her summary judgment response to identify any particular text messages to raise a fact issue on whether she terminated the listing agreement in accordance with paragraph 15's requirement that she "sign the paperwork."[4] Indeed, the argument section of her response makes no mention of either paragraph 15 or her termination of the listing agreement.[5]

"[A] party submitting summary judgment evidence 'must specifically identify the supporting proof on file that it seeks to have considered by the trial court.'" *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 195 (Tex. App.—Dallas 2013, pet. denied) (quoting *Bich Ngoc Nguyen v. Allstate Ins. Co.,* 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied)). Because Jones did not raise a genuine issue of material fact to show that paragraph 15, and not paragraph 5, controlled in this case, we conclude that she failed to satisfy her burden on summary judgment. *See, e.g.*, *Townsend v. Hindes*, 619 S.W.3d 763, 772 (Tex. App.—San Antonio 2020, no pet.) (when Townsend's response did not identify any

---

[4] Jones notes that the text messages advising Wages that she no longer intended to sell her home were attached to her response. She also directs this Court to her earlier-filed response to appellees' summary judgment motion for attorneys' fees on her affirmative claims, which includes a statement that she terminated the listing agreement in a July 24, 2015 communication to Wages. Her response to the summary judgment motion on appellees' counterclaim, however, did nothing to alert the trial court, or appellees, that she was relying on any particular texts as evidence raising a fact issue on her termination of the listing agreement.

[5] Jones also did not raise her argument that paragraph 15 controlled whether appellees were entitled to a commission in either her summary judgment motion on appellees' counterclaim or her motion for reconsideration of the summary judgment.

–11–

summary judgment evidence supporting his assertion that an unidentified property owner claimed not to be bound by a road use agreement, he failed to raise a genuine issue of material fact on issue of legal access); *Thompson v. Harco Nat. Ins. Co.*, 120 S.W.3d 511, 515–16 (Tex. App.—Dallas 2003, pet. denied) (when appellant did not inform trial court that cargo being transported at time of accident was ultimately destined for Mexico in its motion for summary judgment or response to appellee's cross-motion, which argued truck was not engaged in interstate commerce, appellant could not raise argument as ground for reversal on appeal).

We overrule Jones's first issue.

## Jones's Claims for Breach of Fiduciary Duty and Contract

In her third issue, Jones asserts that the trial court erred in granting no-evidence and traditional summary judgment on her affirmative claims for breach of fiduciary duty and breach of contract and denying her related motion for reconsideration.[6] Jones complains of Wages's conduct in taking "it upon himself to attempt to salvage the transaction and earn his commission and not look out for

---

[6] Again, Jones does not separately address, under the appropriate standard of review, the trial court's denial of her motion for reconsideration. Accordingly, she has waived our review of the issue. *See* TEX. R. APP. P. 38.1(i); *e.g.*, *RTLC AG Prod.*, 195 S.W.3d at 833. Instead, she claims that we may consider any evidence attached to the motion for reconsideration. A trial court "may consider evidence submitted with a motion for reconsideration so long as it affirmatively indicates in the record that it accepted or considered the evidence." *Circle X Land & Cattle Co. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Here, the trial court's order makes no mention of the court having considered evidence attached to Jones's motion to reconsider, so Jones may not rely on the evidence to challenge the trial court's summary judgment order. *See Di Angelo Publications, Inc. v. Kelley*, No. 14-20-00546-CV, 2022 WL 401561, at *2 (Tex. App.—Houston [14th Dist.] Feb. 10, 2022, no pet.) (mem. op.).

Jones' best interest . . . after Jones told him that she was having second thoughts about selling." She contends that it is undisputed that appellees were fiduciaries, the evidence established that they breached their fiduciary duty and the listing agreement,[7] and there was evidence that she was damaged by the breaches.

Appellees moved for a no-evidence summary judgment on the ground, among others, that Jones had no evidence that she sustained damages as a result of any breach of a fiduciary obligation owed to her by Wages or any breach of the listing agreement. Thus, to avoid summary judgment on either claim, Jones was required to present evidence raising a genuine issue of material fact on causation.[8] *See* TEX. R. CIV. P. 166a(i); *Rogers v. Zanetti*, 517 S.W.3d 123, 136 (Tex. App.—Dallas

---

[7] According to Jones's appellate brief, the evidence established that, or raised a genuine issue of material fact as to whether, Wages breached his fiduciary duty to her by: (1) taking it upon himself to make an offer to pay for the roof repairs and offer money to pay for other repairs when he knew that Jones did not want to sell her house; (2) failing to tell Jones about his negotiations with the buyers' agent to pay for repairs and attempting "to go behind her back to avoid having her sign an amendment" to the sales contract; (3) failing to advise her that the option period had expired on July 21 and she was under no obligation to agree to any amendments so the buyers could only move forward with an "as is" sale at the original closing date; (4) failing to respect Jones's instructions regarding paying for repairs and instead "attempting to effectively amend the [sales contract] by paying for the repairs himself in an attempt to ensure that he earned a commission"; (5) failing to advise that Jones was under no obligation to extend the closing date and that the sale contract would have terminated if the buyers did not close on time; (6) steering Jones to discuss the situation with an attorney associated with Wages after she told Wages that she had consulted her attorney; and (7) revealing that their real concern was "that another agent could scoop it up and sell it." Jones asserts that Wages's attempt to pay for repairs without Jones's knowledge or agreement, including "after Jones terminated that agreement," violated the listing agreement. The evidence she cites in support for all but one alleged breach was attached to either her motion for reconsideration or was part of her later-filed motion for reconsideration of the summary judgment on appellees' counterclaim for breach of the listing agreement.

[8] A plaintiff may seek equitable remedies without having to establish that she suffered actual damages for a breach of fiduciary duty. *See Henry v. Notzon*, No. 05-20-00994-CV, 2023 WL 4731274, at *9 (Tex. App.—Dallas July 25, 2023, no pet.) (mem. op.) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017), and *Burrow v. Arce*, 997 S.W.2d 229, 238, 240 (Tex. 1999)). Jones, however, sought only actual damages.

2015), *aff'd*, 518 S.W.3d 394 (Tex. 2017) (causation is an essential element of a breach of fiduciary duty claim seeking actual damages as a remedy); *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 528 (Tex. App.—Dallas 2020, pet. denied) ("In an action for breach of contract, actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct.") (citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981)).

In response to appellees' summary judgment motion, Jones argued, without citing to any specific evidence, that she "suffered emotional and financial damages created by the actions of Wages. The damages model [she] provided . . . outlines the damages created by Wages while acting as [Jones's] agent without her knowledge and/or authorization." Jones did not attach evidence of damages to her summary judgment response, but provided the following model in an interrogatory response:

| Damages Category | Amount |
|---|---|
| Settlement Amount | $8,025 |
| Mortgage Interest Rate Difference | $169,429 |
| Attorney Fees | $8,539 |
| Litigation Cost - Court Reporter Fees | $2,250 |
| Mental Anguish and Distress | $100,000 |
| Total | $288,243 |

And, according to Jones's response, absent Wages's conduct in arranging for the closing date to be extended and agreeing to pay for some of the repairs himself after she told him she was having "second thoughts" and "without [her] authorization or

consent," the buyers "would have had to purchase the property 'as is' or walk away from the deal."

The evidence attached to Jones's summary judgment response fails to raise a genuine issue of material fact on whether any alleged damages resulted from a breach by Wages. Although Jones shared that she was having second thoughts, she thereafter agreed, and signed an amendment, to extend the closing date. She also responded "okay" when Wages disclosed his plans to pay for the roof repairs. When Jones first told Wages that she was not going to sell her house a few days later, she explained that her decision was due to a change in her circumstances, specifically that she was no longer employed and no longer had the option of living where she had planned to live. Wages informed the buyers' agent of her offer to terminate, but they did not accept and, ultimately, sued.

The summary judgment evidence shows that Jones's alleged damages arose from her withdrawal from the sales contract for reasons unrelated to Wages's closing and repair negotiations. Accordingly, we conclude that Jones failed to raise a genuine fact issue on whether her alleged damages resulted from either a breach of fiduciary duty or breach of contract by appellees and the trial court properly granted appellees' no-evidence summary judgment motion.[9]

We overrule Jones's third issue.

---

[9] Having concluded that the trial court properly granted the no-evidence summary judgment, we need not consider appellees' traditional summary judgment motion. *See Merriman*, 407 S.W.3d at 248.

–15–

## Attorneys' Fees

In her second and fourth issues, Jones claims we must reverse the attorneys' fees awards because appellees were not entitled to prevail, either on their counterclaim or with respect to their defense against her affirmative claims, and therefore could not recover fees pursuant to the listing agreement[10] or under Chapter 38 of the Texas Civil Practices and Remedies Code. Having overruled Jones's first and third issues, we need not address this argument. *See, e.g.*, *Broyhill Furniture Indus., Inc. v. Murphy*, No. 05-11-01545-CV, 2013 WL 4478172, at *9 (Tex. App.—Dallas Aug. 20, 2013, no pet.) (mem. op.).

In her fifth issue, Jones contends the evidence was legally and factually insufficient to support the trial court's award of conditional attorneys' fees for enforcement of the judgment and appeal. According to Jones, there was "no indication of what hourly rates would be, what time would be spent on various appellate tasks (e.g., reviewing the record, conducting legal research, preparing a brief or petition for review)."

A party seeking attorneys' fees bears the burden of proof and must provide enough facts to support the reasonableness of the amount awarded. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020). To recover fees for

---

[10] The relevant paragraph in the listing agreement provides that, "[i]f Seller or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing or any transaction related to or contemplated by this Listing, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees."

contingent appellate services, a party must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* at 355. The same requirement applies if a party is statutorily or contractually entitled to attorneys' fees incurred for post-appeal collection efforts. *Vertical Holdings, LLC v. LocatorX, Inc.*, No. 05-22-00720-CV, 2023 WL 5949023, at *7 (Tex. App.—Dallas Sept. 13, 2023, pet. filed) (mem. op.).

In accordance with *Yowell*, the record contains expert evidence in the affidavits of two of appellees' attorneys. An affidavit by E. Jason Billick identified the partner and associate rates being charged for the legal services provided in connection with the claims brought by Jones against appellees, and Billick averred that the rates were discounted and reasonable for that work. Billick also identified the specific efforts that would be required both for collection of the judgment (post-judgment discovery, depositions, and seeking a turnover order) and further appeal (briefing and, if requested, oral argument in the court of appeals; in the supreme court, briefing at the petition for review stage and on the merits and, if oral argument is granted, preparation for argument and argument). Billick's affidavit set out the reasonable and necessary attorneys' fees for the collection efforts and each stage of appeal. Rachel L. McKenna provided the same information with respect to the legal services provided in prosecuting appellees' counterclaim against Jones.

–17–

The affidavits provided sufficient evidence of both the services appellees reasonably believed would be necessary for collecting judgment and defending the appeal and a reasonable hourly rate for those services. *See, e.g.*, *Bennett v. Zucker*, No. 05-19-01445-CV, 2021 WL 3701365, at *12 (Tex. App.—Dallas Aug. 20, 2021, pet. denied) (mem. op.) (counsel's testimony to "a reasonable 'blended' hourly rate, considering his normal billing rate and the rates [of] other lawyers in the firm with less experience, and a 'reasonable amount of time' for each level of appeal" sufficient to support the trial court's award of trial and appellate attorneys' fees). Accordingly, we conclude there is legally and factually sufficient evidence to support the trial court's attorneys' fees awards.

We overrule Jones's second, fourth, and fifth issues.

## Conclusion

We affirm the trial court's judgment.

221252f.p05

/Robert D. Burns, III//
ROBERT D. BURNS, III
CHIEF JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHANIE JONES, Appellant

No. 05-22-01252-CV     V.

GUILDFORD LLC D/B/A KELLER WILLIAMS REALTY AND JEREMY WAGES, Appellees

On Appeal from the 471st Judicial District Court, Collin County, Texas
Trial Court Cause No. 471-03696-2019.
Opinion delivered by Chief Justice Burns. Justices Carlyle and Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees GUILDFORD LLC D/B/A KELLER WILLIAMS REALTY AND JEREMY WAGES recover their costs of this appeal from appellant STEPHANIE JONES.

Judgment entered this 11th day of December, 2023.